(Decided 21st May, 1872.)

# THE FRANKLIN FIRE INSURANCE COMPANY OF BALTIMORE *vs.* THE CHICAGO ICE COMPANY.

*Fire Insurance — Implied Waiver — Estoppel — Construction of Clauses in a Policy of Insurance against Fire — Builder's Risk — Evidence of Insurable interest.*

Where the preliminary proofs of the loss by fire of property insured are furnished to the insurance company within a reasonable time, and no objection is then made to such proofs or to the absence of a certificate required of the insured by a condition of the policy, and the insurance company months afterwards refuses to pay the loss under the policy upon other and distinct grounds, and at the time of such refusal makes no objection to the proofs of loss, or to the absence of the certificate, it will be estopped in an action on the policy, to sit up and rely upon such objections, notwithstanding the policy provides that "nothing but a distinct specific agreement, clearly expressed and endorsed on the policy, shall operate as a waiver of any printed or written condition, warranty or restriction therein."

A clause in a policy of insurance against fire, that "nothing but a distinct specific agreement, clearly expressed and endorsed on the policy, shall operate as a waiver of any printed or written condition, warranty or restriction therein," refers to those conditions and provisions of the policy which enter into and form a part of the contract of insurance, and are essential to make it a binding contract between the parties, and

which are properly designated as *conditions;* it has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing preliminary proofs of the loss.

Where from the character and structure of a building insured, and the use made of it, it is necessary to employ workmen the year round to repair, and keep it in thorough condition for the business to which it is appropriated, such employment of workmen thereon does not vitiate the policy under the memorandum printed thereon, entitled "Builder's Risk," which provides that "the working of carpenters, roofers, tin-smiths, gas fitters, plumbers or other mechanics, in building, altering or repairing the premises named in this policy, will vitiate the same, unless permission for such work be endorsed in writing hereon."

The true intention of this article in the policy is to prohibit such hazardous use of the building insured, as is generally denominated *"builder's risk,"* which arises from placing it in the possession, or under the control of workmen for rebuilding, alteration or repairs; it does not refer to such repairs as are indispensable to the proper conduct of the business to which the building is appropriated.

A person in possession of property, claiming and occupying it as its owner, is *prima facie* presumed to be seized in fee; and in the absence of any proof of an outstanding title in others, or of any incumbrance upon the property, this *prima facie* presumption is sufficient to show an insurable interest therein.

APPEAL from the Superior Court of Baltimore City.

This was an action of *covenant* on a policy of insurance issued by the appellant to the appellees, insuring against loss or damage by fire, to the amount of twenty-five hundred dollars, from the 10th of November, 1868, to the 10th of November, 1869, "their one story frame ice house, situate, detached, on the line of the Chicago and North Western Railroad, at Chrystal Lake, McHenry County, Illinois." The fire occurred early on the morning of the 11th of August, 1869, and on the same day, Mr. Blake, the secretary of the appellee, gave notice of the loss to Messrs. Campbell, Whitman & Wallace, the agents in Chicago of the appellant who took the insurance, and on the same day they sent the notice of the loss to the appellant. The proofs of loss were then made out by the secretary, Mr. Blake, who was inexperienced in such

matters, and was not aware of the necessity to have a certificate of the nearest magistrate or notary public, as required by the following condition of the policy:

X. Persons sustaining loss or damage by fire, shall forthwith give notice thereof in writing to the Company, and as soon after as possible they shall deliver as particular an account of their loss and damage as the nature of the case will admit, signed with their own hands. And they shall accompany the same with their oath or affirmation, declaring the said account to be true and just; showing also whether any and what insurance has been made on the same property; giving a copy of the written portion of the policy of each Company; what was the whole cash value of the subject insured, and their interest therein; in what general manner the building insured or containing the subject insured, and the several parts thereof, were occupied at the time of the loss, and who were the occupants of such building, and when and how the fire originated. They shall also produce a certificate, under the hand and seal of a magistrate, notary public, or commissioner of deeds most contiguous to the place of the fire, and not concerned in the loss as creditor or otherwise, not related to the assured, stating that he has examined the circumstances attending the fire, loss or damage alleged, and that he is acquainted with the character and circumstances of the assured, and that he verily believes that he, she or they have, by misfortune and without fraud or evil practice, sustained loss and damage, on the subject insured, to the amount which such magistrate, notary public or commissioner of deeds may certify.   *   *   *   *

When Campbell, Whitman & Wallace, on the 11th of August, 1869, sent the notice of loss, they received in reply from the president of the appellant a letter dated the 17th of the same month, by which they were notified that the matter

had been referred to Barnum & Wells as the adjusters of the appellant. Barnum & Wells declined to act, but, with the approval of the appellant, employed R. H. Lawrence as adjuster in their stead. Blake, the secretary of the appellee, made up the proofs of loss and left them with Campbell, Whitman & Wallace ten days or two weeks after the fire. No objection was made to the want of a certificate. Campbell, Whitman & Wallace, after retaining the proofs for several days, returned them to Blake, with directions to hand them to Mr. Lawrence, the adjuster. Blake delivered the proofs to Lawrence, receiving a promise to let him know if they were deficient, after he had examined them. The proofs were sent by Lawrence to the appellant, and they were received about the last of September, 1869. No notice was ever given to the appellee of any objections to the proofs furnished, on the ground of the absence of the certificate, and no objection was made, even in general terms, to the proofs, until the letter of the president of the appellant to the appellee's attorney, under date of the 28th of December, 1869. In the month of December, Mr. Smith, the president of the appellee, went to Baltimore, and there had an interview with the president of the appellant and demanded payment, which was refused, not on the ground of the insufficiency of the proofs, but because, as the appellant claimed, it was not on the risk. Mr. White, the president of the appellant, gave a different statement of the interview, but fixed the date of the meeting as early in December. Mr. Smith having been unable to obtain the amount which he claimed under the policy, applied to counsel, whereupon the following correspondence occurred between them and the president of the appellant:

BALTO., Decr. 17, 1869.

DEAR SIR: We hold for collection the claim of the Chicago Ice Company, under your Policy, No. 2396, for $2,500. We understand you have received proof of loss.

If the same is insufficient or defective in any particular, we will gladly correct it upon notice.

We trust we can arrange this matter with you without suit.

Truly yours,

MARSHALL & FISHER.

Mr. WHITE, *Prest. Franklin Fire Insurance Co.*

BALTIMORE, Dec. 18, 1869.

Mess. MARSHALL & FISHER:

GENTLEMEN: Your note is at hand and duly considered. I have written to Chicago for a full report in regard to the loss of Chicago Ice Co., and expect to receive it in a few days, when I will call upon you.

Very truly yours,          L. S. WHITE, *Prest.*

BALTIMORE, Dec. 28, 1869.

Mess. MARSHALL & FISHER:

GENTLEMEN: The papers sent us as " Proofs," in regard to loss of Chicago Ice Co., are not complete nor satisfactory. You will therefore please have the same properly prepared and placed in our hands, so that we can give the same proper examination and consideration.

Very truly yours,          L. S. WHITE, *Prest.*

BALTIMORE, 29th Decem., 1869.

L. S. WHITE, Esq., *Prest. Franklin F. Ins. Co.:*

DEAR SIR: Yours of 28th inst. is received. In your former letter, of the 18th inst., you informed us that you had written to Chicago for a full report in regard to the loss, and expected to receive it in a few days, when you would call upon us. It seems that at the date of your first letter you made no objection to the proof of loss, nor are we aware in what respect you now object to it.

If you will indicate the particulars in which you consider the proof of loss defective, we will take measures to have all such defects cured as far as we may deem it material to do so.

We desire also to know, to save all unnecessary trouble, whether your company will pay upon being furnished with such preliminary proof as your policy requires.

Very respectfully, your obt. servts.,

MARSHALL & FISHER.

BALTIMORE, Jan. 3d, 1870.

Mess. MARSHALL & FISHER, *Balto.:*

GENTLEMEN : As Prest. of the Franklin Fire Ins. Co., I must insist that the Chicago Ice Co. shall furnish proper legal preliminary proofs of loss before they claim payment of this company, and I do not intend in anywise to waive the production of such preliminary proofs as required by our policy. What preliminary proofs are necessary and *material,* you must determine from the policy, and as lawyers you can do that better than myself.

Very truly yours,        L. S. WHITE, *Prest.*

The following memorandum was printed on the back of the policy of insurance :

☞ Builder's Risk.—The working of carpenters, roofers, tinsmiths, gas fitters, plumbers or other mechanics, in building, altering or repairing the premises named in this policy, will vitiate the same, unless permission for such work be endorsed in writing hereon.

*Exception :* The plaintiff offered three prayers, the second and third of which the Court refused ; the first as follows, it granted :

1st. That if the jury shall find from the evidence that the plaintiff furnished to the agent of the defendant, in Chicago, the preliminary proofs of loss offered in evidence, and that said proofs were forwarded by said agent to the defendant, and received by the defendant on the 25th of September, 1869, and that the defendant retained said proofs of loss, and

made to the plaintiff or its agents no objection thereto, nor any objection to the absence of a certificate, as required by the 10th condition of the policy, up to the time when Mr. White, president of the defendant, had the conversation with the witness Smith, testified to by said Smith in the month of December, 1869, should the jury find such conversation. And if they further find that in said conversaition the said president of the defendant refused to pay the loss under said policy, upon grounds other than the defects of said proofs of loss, or the absence of said certificate, or both, and that at the time of so refusing to pay, the said president of the defendant made to said Smith no objection to said proofs of loss, or to the absence of said certificate, then the defendant cannot now object to the sufficiency of said proofs, or the absence of said certificate, notwithstanding the jury may find that the witness White wrote the letters of December 28th, 1869, and January 3d, 1870, under the circumstances offered in evidence.

The defendant offered the following prayers:

1st. That if the jury believe the statement of the witness, James P. Smith, Jr., the president and superintendent of the plaintiff, in his deposition contained, that he kept a crew of workmen and a carpenter or two about the building in controversy the year round, and was constantly making repairs and keeping the building in thorough condition, the policy was vitiated by reason of the facts so stated under the memorandum printed on the back of said policy, and headed "Builders' Risk," and the verdict must be for the defendant.

2d. That the preliminary proof offered in evidence by the plaintiff as having been furnished to the defendant prior to the institution of this action, is not legally sufficient to entitle the plaintiff to recover, and it being admitted that the president of the defendant, acting for it, addressed to the attorneys of the plaintiff and sent to them, on or about the 3d of January, 1870, the letter of that date, which is in evidence, the verdict of the jury must be for the defendant.

3d. That the plaintiff was bound to disclose and make known to the defendant, before or at the time of the delivery of the policy in suit, every fact material to the risk; and if the jury shall find that the plaintiff failed or omitted so to disclose and make known to the defendant any fact whatever, material to the risk, the jury must find for the defendant. Even although the jury should further find that Campbell, Whitman & Wallace, of Chicago, were at that time agents of the defendant, to receive and forward applications for insurance, and that they were referred by the plaintiff to L. N. Moore & Co., of Chicago, and took the form of the policy or application from one of the forms of said L. N. Moore & Co., without any representation on the part of the plaintiff as stated by the witness Wallace. This prayer was refused as offered, but granted with the following modification:

But in considering the proposition put to them in this prayer, the jury are to take into consideration that the defendant, in making insurance upon an ice house like that mentioned in the evidence and devoted to the uses therein mentioned, is presumed to know and to have contemplated all the casualties and incidents to which the subject might be properly liable as such ice house, devoted to such uses.

4th. That Campbell, Whitman & Wallace, of Chicago, were capable of acting in law and fact as the agents of the plaintiff, in obtaining insurance from the defendant, notwithstanding they were at the same time agents of the defendant to procure business for it. And if the jury shall find that the plaintiff did so make the said firm its agents in this case, the plaintiff is as much bound by their acts done in the cause of such agency, as if they had not been defendant's agents at the same time.

5th. That the defendant is not bound by any acts of parties in Chicago, purporting to be its agents, except to the extent to which the jury shall find that they were authorized by the defendant to act for it, prior to the acts done, or at the time

thereof, and not subsequently thereto; [*unless they shall find that after the said acts, and with full knowledge thereof, the defendant ratified and confirmed them.*] And the jury, in determining upon the existence and extent of any such agency, must be governed by their own conclusions from the evidence, and not by the declarations or pretensions of parties claiming to be agents of the defendant, and to act in its name, although the testimony of such parties, as witnesses, may be regarded for that purpose along with its other evidence in the case. (Refused as offered, but granted with this modification:) Unless they shall find, that after the said acts, and with full knowledge thereof, the defendant ratified and confirmed them.

6th. That if, during the period embraced in the policy, the premises in question were so occupied or used as to increase the risk, or if the risk, during the said period, was increased by any means whatever within the control of the assured, the policy is void, and the plaintiff is not entitled to recover.

7th. That if the jury find from the evidence, that the application which the plaintiff made or authorized to be made to the defendant for the insurance in controversy, omitted or concealed any fact in the description of the premises, material to the risk, then the plaintiff cannot recover. The sixth and seventh prayers were refused as offered, but granted with the modification:

But in considering these prayers, the jury will take into consideration the nature and use of the property as described in the evidence.

8th. That the plaintiff is bound by the representation as to contributing insurance contained in its application, and if that representation was untrue, the policy is void, and the plaintiff is not entitled to recover.

9th. That even if the plaintiff should, under any instruction of the Court, be entitled to a verdict, it can only recover upon the basis of contribution stated in the application.

10th. That there is no legal or competent evidence in this cause to show that the plaintiff in this case had any legal

insurable interest in the property mentioned in this cause as destroyed by fire, either at the time of the making of said policy or at the time of its destruction by fire, as testified to in this cause, and therefore the plaintiff is not entitled to recover.

11th. That the preliminary proofs shown by the evidence to have been furnished to the defendant by the plaintiff, are in themselves insufficient under the policy, and their verdict must consequently be for the defendant, unless they find the facts to be true which are assumed as the basis of the plaintiff's first prayer granted by the Court. And by the words " preliminary proofs," the defendant means to cover the certificate of a magistrate, notary public or commissioner, required by the tenth condition of the policy.

The defendant, by its counsel, objected to the first prayer of the plaintiff, because the evidence in the case was insufficient to support the proposition of law therein asserted, even if such proposition were law upon the hypothesis of facts that it assumed, which was denied.

The Court (DOBBIN, J.) rejected the defendant's first, second, third, fifth, sixth, seventh, eighth, ninth and tenth prayers as offered, but granted the third, fifth, sixth and seventh with modifications, and granted as offered its fourth and eleventh.

To the granting of the plaintiff's first prayer, and to the refusal of the Court to grant the defendant's first, second, third, fifth, sixth, seventh, eighth, ninth and tenth prayers as offered, the defendant excepted; and the verdict and judgment being for the plaintiff for $2,348.78, &c., the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*R. J. Bouldin* and *John Carson*, for the appellant.

The obligation to furnish preliminary proof in accordance with the tenth condition of the policy could not be released by an *implied waiver*, based on the testimony of Smith, in the

face of the last clause of the eighth condition, which requires an express waiver. *Forbes vs. Agawam Mut. Fire Ins. Co.*, 9 *Cush.*, 470; *Gatch vs. Abbott*, 13 *Md.*, 314; *Spring Garden Mut. Ins. Co. vs. Evans*, 9 *Md.*, 15, 16; *Hale vs. Mechanics' Mut. Fire Ins. Co.*, 6 *Gray*, 173.

The plaintiff's first prayer was therefore bad in law, and obnoxious to the exception of no testimony to support it, as there was no testimony in the cause of *express waiver*. *Abbott vs. Shawmut Mut. Fire Ins. Co.*, 3 *Allen*, 215; *Mutual Ins. Co. vs. Deale*, 18 *Md.*, 27; *Ames vs. N. Y. Union Ins. Co.*, 14 *N. York*, 264.

The case of 12 *Gray*, 265, is in hostility to 13 *Md.*, 314; it admits, that under a policy like this, there can be no implied waiver, but maintains the *imperfect proof* by the doctrine of estoppel, while the cases on which 12 *Gray*, 265, relies are those which establish the doctrine of an implied waiver; waiver and estoppel are wholly different; the latter is inapplicable to the contract, and is a novel method of doing away with the contract.

The ice company, through their attorney, waived the waiver by the offer of December 17th, and December 29th, 1869, to furnish preliminary proof; and the express notice of the company that they waived nothing, obliged them to furnish proper proof. *Citizens' Fire Ins., Security and Loan Co. vs. Doll*, 35 *Md.*, 89.

If proper preliminary proof had been furnished in compliance with the correspondence, it would have been an implied waiver of the so-called catching condition.

Smith swears the ice house was nearly as good as new, for the reason that he had always kept a crew of men, and a carpenter or two about the building the year round, and was constantly making repairs and keeping the building in thorough condition. This avoided the policy under the clause entitled, "Builder's Risk."

There was a stable under the ice house; the Court's modification of the third prayer of the appellant in effect decided,

that this fact, though material to the risk, was not necessarily to be disclosed by the insured. The same objection applies to the Court's modification of the sixth and seventh prayers of the defendant. *Augusta Ins. and Bank. Co. vs. Abbott*, 12 *Md.*, 348 ; *Franklin Fire Ins. Co. vs. Coates & Glenn*, 14 *Md.*, 295–299 ; *Howell's Ex'rs. vs. Baltimore Equitable Society*, 16 *Md.*, 384.

The eighth and ninth prayers were an affirmation of the eighth condition of the policy. *Smith vs. Mechanics and Traders' Ins. Co.*, 32 *N. Y.*, 399 ; *Baltimore Fire Ins. Co. vs. Loney, et al.*, 20 *Md.*, 20.

There was no sufficient legal evidence of ownership; possession merely was not sufficient under the seventh clause of the policy, and the testimony being all given subject to exception, the parol proof that the building belonged to the ice company was inadmissible. *Baltimore Fire Ins. Co. vs. Loney, et al.*, 20 *Md.*, 20 ; *Illinois Mut. Fire Ins. Co. vs. Marseilles' Man. Co.*, 1 *Gilman*, 236.

*William A. Fisher* and *Charles Marshall*, for the appellee.

The first prayer of the appellee, and the second of the appellant, relate to the preliminary proof. That of the appellee asserts a waiver arising out of the facts above stated, while that of the appellant disregards all the facts save the absence of the certificate, and asserts that the jury must find for the appellant for that reason.

It is sufficient to support the waiver, that the refusal to pay was put distinctly on other grounds than the absence of the certificate. *Edwards vs. Baltimore Fire Ins. Co.*, 3 *Gill*, 186 ; *Franklin Fire Ins. Co. vs. Coates & Glenn*, 14 *Md.*, 294, 295 ; *Tayloe vs. Merchants' Ins. Co.*, 9 *Howard*, 403, 404 ; *McMasters vs. West Chester Ins. Co.*, 25 *Wendall*, 379 ; *Flanders on Ins.*, 542, 543.

The appellant's prayer ignores such refusal, and also the promise by the adjuster to call attention to any defects ; under the promise, the appellant was bound to call attention to the

defect within a reasonable time. *Allegre vs. Ins. Co.*, 6 *H. & J.*, 412, 413.

The appellant's prayers also ignore the result of the immediate appointment by the appellant of an adjuster, and its determination to act by his advice, from his own examination, and not from a consideration of any preliminary proof. This, coupled with the absence of objection in due time, relieves any exception to the proofs. *Priest vs. Citizens' Mut. Ins. Co.*, 3 *Allen*, 602 ; *Sexton vs. Montgomery County Ins. Co.*, 9 *Barb.*, 191 ; *Blake vs. Exchange Mut. Ins. Co.*, 12 *Gray*, 265 ; *Lycoming County Mutual Ins. Co. vs Schollenberger*, 44 *Penna. State*, 259.

If the appellee had undertaken to supply the certificate after December 28th, 1869, and abandoned its right to rely upon the waiver which had already resulted, it would have been met with two difficulties—first, it would have been contended by the appellant that the proof was to be considered as furnished only when completed by the certificate, and that it was then too late, under the tenth condition of the policy ; second, the loss would then be payable only after the expiration of sixty days from due notice, proofs and adjustment. Among the various catching conditions of the policy are, (16th,) provided that no suit should be maintained *unless brought within six months after the loss.*

If the certificate had been furnished after the 28th of December, the appellant would have treated the proofs as then made, waited for sixty days and then refused to pay, and, as more than six months would have elapsed since the fire, would have defied the appellee under the sixteenth condition.

The appellant relies also to sustain its theory as to the preliminary proof, on the last clause of the eighth condition, which provides that nothing but an agreement, endorsed on the policy, shall operate as a waiver of any condition. Such a condition may be waived as well as another. But what the appellee relies on is not a waiver of the production of proofs in the sense of the condition ; the proofs were produced, and

the conduct of the appellant estops it from saying they are not perfect. *Blake vs. Exchange Mut. Ins. Co.*, 12 *Gray*, 265.

The next question arises under the first prayer of the appellant. Among other memoranda printed on the back of the policy, was one entitled "Builder's Risk," which provided that the working of carpenters, roofers, tinsmiths, gas fitters, plumbers, or other mechanics, in building, altering or repairing the premises named in the policy, without permission endorsed in writing on the policy, should vitiate it. Mr. Smith, president of the appellee, stated that the ice house was nearly as good as new, because he "had always kept a crew of men and a carpenter or two about the building the year round, and was constantly making repairs and keeping the building in thorough condition." The prayer asserts that such mode of dealing with the building avoided the policy. There *was* in fact a sufficient endorsement on the policy in writing of the authority to make such repairs as are described. The evidence shows the character of the ice house, its dimensions and its capacity.

The appellant insured such an ice house, knew that it was all of wood, and that it would be knocked to pieces in a single season's business, unless breakages were made good as they occurred. It was indispensable to the proper conduct of the appellee's business, and the insurance as an ice house was in itself a permission. *Wash. Fire Ins. Co. vs. Davison and Symington*, 30 *Md.*, 107, 108.

Interpreted as the prayer seeks to do, the article would be repugnant to the written clause—insuring the building—and would be governed and controlled by it. *Flanders on Ins.*, 305, 311–315; *Harper vs. Albany Insurance Co.*, 17 *New York Rep.*, 194.

But the article does not admit fairly of the interpretation put upon it. The term, "Builder's Risk," is well known to insurers and others, and does not include casual patching up about a building, but the putting the building under the control of the mechanics. *Maryland Fire Ins. Co. vs. Whiteford*,

*et al.*, 31 *Md.*, 225; *Grant vs. The Howard Ins. Co. of New York*, 5 *Hill*, 10.

The modifications added by the Court to the third, sixth and seventh prayers were entirely unobjectionable, as they but stated the proposition advanced by this Court in the case of *Washington Fire Insur. Co. vs. Davison and Symington*, 30 *Md.*, 108.

The modification added to the fifth prayer is even less liable to objection, as it merely states the effect of a deliberate ratification by the appellant of the acts of its agent.

The eighth prayer of the appellant was a mere abstract proposition, and was properly refused. There was no evidence whatever of the untruth of any representation in the application as to contributing insurance. The prayer seems to have been based upon the error which is embodied in the ninth prayer, namely, that the assured warrants that the same insurance shall be continued on the insured property that was on it at the time of the insurance. There is no such warranty. *Forbush vs. Western Mass. Ins. Co.*, 4 *Gray*, 337.

Therefore the ninth prayer was also properly refused, because it asks for contribution on the basis of the insurance existing at the time of the application, and not of the loss—assuming that the assured is obliged to continue the same insurance as at the time of the application.

The appellant's tenth prayer asserts that there is no sufficient evidence of an insurable interest in the appellee, at the time of the making of the policy. Even if proof be necessary, the fact that the appellee was in possession of the property, claiming it as its own, is *prima facie* evidence of seizin in fee. 1 *Phillip's Ev.*, 646.

BARTOL, C. J., delivered the opinion of the Court.

This is an action of covenant on a policy of insurance, issued by the appellant to the appellee, " on their one-story frame ice house, situate, detached, on the line of the Chicago and N. W. R. R., at Chrystal Lake, McHenry Co., Illinois."

No question arises upon the pleadings, all errors therein having been waived by agreement.

The first ground of defence relied on by the appellant, was the failure of the appellee to furnish the preliminary proof of loss, in manner and form as required by the tenth condition of the policy. The fire occurred on the morning of the 11th of August, 1869, and on the same day, notice thereof was given to the agents of the appellant, who on the same day notified the appellant. Proofs of loss were made up and transmitted to the appellant within a reasonable time, but it is objected that they were defective and insufficient.

The appellee on the other hand contended that the appellant, by its conduct and proceeding, after it had been notified of the fire, and received the proofs of loss, had waived all objection thereto, and was precluded from objecting to their sufficiency.

By the first prayer of the appellee (which was granted) the jury were instructed that if they should find from the evidence the facts therein enumerated, the appellant could not now object to the sufficiency of the proofs of loss, or to the absence of a certificate as required by the tenth condition of the policy.

Distinct objection to this prayer was made in the Court below, on the ground of the want of evidence to support it; and the same objection is urged in this Court by the appellant; not because there was no evidence tending to prove the facts enumerated in the prayer, but because there was no testimony in the cause of an *express waiver*, as required by the eighth condition of the policy; without which, it is argued, the obligation to furnish preliminary proof, in accordance with the tenth condition of the policy, could not be released; and that an implied waiver would not be sufficient, and could not be shown in the face of the eighth condition.

Apart from the terms contained in the last clause of the eighth condition of the policy, there can be no doubt that the facts stated in the appellee's first prayer, if believed by the

jury, would amount to a waiver of the defects in the preliminary proofs, and preclude the appellant from objecting to their sufficiency. *Allegre vs. Ins. Co.,* 6 *H. & J.,* 412, 413; *Edwards vs. The Baltimore Fire Ins. Co.,* 3 *Gill,* 186; *Franklin Fire Ins. Co. vs. Coates & Glenn,* 14 *Md.,* 294, 295; *Tayloe vs. Merchants' Fire Ins. Co.,* 9 *Howard,* 403, 404.

These decisions sufficiently show the principles which govern in ordinary cases, arising under policies of insurance, containing stipulations with regard to the preliminary proofs of loss to be furnished by the assured.

The difficulty in the present case grows out of the terms of the eighth condition in the policy; which is in these words: "Should the assured, in making application for insurance, submit a survey, plan or description of the property herein insured, upon which this insurance is effected, such application, survey, plan or description shall be considered a part of this contract and a warranty by the assured. And any misrepresentation whatsoever, whether in written application or otherwise, or any omission to disclose and make known every fact material to this risk, will vitiate this policy. Nothing but a distinct, specific agreement, clearly expressed, and endorsed on this policy, shall operate as a waiver of any printed or written condition, warranty or restriction therein."

The effect of a provision of this kind, in a policy of insurance, was considered by the Supreme Court of Massachusetts, in *Blake vs. Exchange Mutual Ins. Co.,* 12 *Gray,* 265. The language of the very able Judge who gave the opinion of the Court is so apposite to this case, that we quote it at length. "How far the provisions as to the form of the notice and proofs of loss, after a valid contract has been made and a loss taken place under it, can be regarded as conditions of the contract itself, it is not necessary to determine, nor whether their being classed under the designation of conditions of insurance could change the nature and purpose of the stipulations themselves; for it seems to us that the question is not as to the provisions of the contract, but as to the per-

formance of the provisions. The plaintiff is not seeking to set up a contract from which a material provision has been omitted by the oral consent of the officers of the company. The policy contained the usual provisions as to notice and proofs of loss. Upon the happening of the loss, the plaintiff sent to the defendants certain notices and proofs in pursuance of the requisition of the by-laws upon the subject. If the notices were defective, good faith on the part of the underwriters required them to give notice to the insured. If they failed to do so, if they proceeded to negotiate with the plaintiff, without adverting to the defects, if still further, they put their refusal to pay, on other and distinct grounds, they are, upon familiar principles of law, estopped to set up and rely upon the defective notices; the law assumes that the notices were correct, and will not listen to the defendant when he seeks to show the contrary." After citing several authorities the learned Judge proceeds: "If the plaintiff relied upon any exemption from the obligations of the policy, or any modification of them by the agents or officers of the company, or any addition, he must show such exemption, modification or addition by endorsement upon the policy. But the question whether a stipulation as to notice and proofs of loss has been fulfilled, or whether the defendant is in a condition to be heard upon that question, must be tested by the ordinary rules of law. There is a time when objections in matters of form must be taken. If they are not then made, they never can be made. The law does not say the procedure was perfect, but that the question is not open. The adherence to and liberal application of this principle are necessary to the maintainance of good faith and fair dealing in judicial proceedings."

We concur in the reasoning of the Court in 12 *Gray*, and consider it applicable to the present case. According to our construction of the last clause in the eighth condition of the policy, it refers to those conditions and provisions of the policy which enter into and form a part of the contract of

insurance and are essential to make it a binding contract between the parties; and which are properly designated as *conditions;* and that it has no reference to those stipulations which are to be performed after a loss has occurred; such as giving notice and furnishing proofs of loss. These are not conditions inherent in the contract itself, but stipulations to be performed by the assured as preliminary to his right of action on the contract, or to the liability of the company to pay the loss. When we read this part of the eighth condition with the context, and construe the whole together, we are satisfied that it has no reference to the requirements with regard to the preliminary proofs of loss found in the "tenth condition" of the policy; and that it was not contemplated with respect to them, that no defect or omission could be waived by the company without a written agreement to that effect endorsed upon the policy.

The cases of *Hale vs. Mechanics' Mutual Fire Ins. Co.,* 6 *Gray,* 169; *Forbes vs. Agawam Mutual Fire Ins. Co.,* 9 *Cush.,* 470, and *Abbott vs. Gatch* 13 *Md.,* 314, cited by the appellant seem to us to be inapplicable. In each of those cases, the matters which the parties stipulated should be evidenced only by agreement in writing, constituted an integral part of the contract essential to make it binding between the parties.

In our opinion there was no error in granting the first prayer of the appellee; and for the reasons before stated the second prayer of the appellant was properly refused.

The next question arises upon the first prayer of the appellant.

The witness James P. Smith, Jr., (the president of the ice company,) stated in his testimony that the "ice house was nearly as good as new, for the reason that he always kept a crew of men and a carpenter or two about the building the year round, and was constantly making repairs and keeping the building in thorough condition." The appellant contends, and by its first prayer asked the Court to instruct the jury that these facts, if believed by them, vitiate the policy

under the memorandum printed thereon entitled "Builder's Risk," which provided that "the working of carpenters, roofers, tinsmiths, gasfitters, plumbers, or other mechanics, in building, altering or repairing the premises named in the policy, without permission endorsed in writing on the policy, should vitiate it."

We think that by a fair and reasonable interpretation of this article of the policy, it cannot be understood as referring to the casual patching up of the building, such as spoken of by the witness; but as prohibiting such hazardous use of the building as is generally denominated *"Builder's Risk,"* which arises from placing it in the possession or under the control of workmen for rebuilding, alteration or repairs. To place upon it such a construction as contended for by the appellant, would defeat the intent of the parties, and be repugnant to the written clause of the policy *insuring the building;* which, looking at its size, structure and use, must have reasonably contemplated the necessity for such repairs as the witness described, as indispensable to the proper conduct of the appellee's business. The evidence shows that the building was two hundred and sixteen feet long and one hundred and forty feet wide; that the height, from the top of the sill to the under sill of the plate, was twenty-six feet; that the walls were of joists three by six inches, hollow two feet thick, filled in with tan; the materials all wood, bound with iron. There was a balcony round the upper part of the house, and an inclined plain, or tramway, fourteen feet wide, extending from the lake to the plate of the ice house, on which the ice was dragged up by horse power. The capacity of the house was *twenty-four thousand tons* of ice. It is very obvious that a building so constructed would necessarily be constantly liable to be injured and damaged by the use for which it was intended, rendering it indispensable for the prosecution of the business of the appellee, that breakages should be repaired as they occurred; all of which was known to the appellants, and will be presumed to have been in their contemplation at

the time the contract was made, and permitted by the written terms of the policy insuring the premises as an ice house.

. For the principles governing the construction of policies of insurance, we refer to *Harper vs. The Albany Mutual Insurance Co.*, 17 *N. Y.*, 194, and *Washington Fire Insurance Co. vs. Davison and Symington*, 30 *Md.*, 92, 107, 108.

We think there was no error in refusing the appellant's first prayer. And upon the same principle, the modification made by the Court below in the appellant's *third, sixth* and *seventh* prayers, is free from objection.

The modification added to the appellant's *fifth* prayer stated the law correctly, and though it appears to have been excepted to below, has not been made a ground of objection in the argument in this Court.

The appellant was not entitled to have its *eighth* prayer granted, as there was no evidence whatever of any misrepresentation as to contributing insurance made at the time of the contract.

The proposition asserted in the *ninth* prayer, that the assured was obliged to continue the same insurance on the property as existed at the time of the application, is erroneous, and was properly rejected. There was no such warranty in the policy. *Forbush vs. Western Massachusetts Insurance Co.*, 4 *Gray*, 337.

The appellant's *tenth* prayer was also properly refused. It asks an instruction to the jury, "that there is no legal and competent evidence in the cause to show that the plaintiff had any legal insurable interest in the property mentioned as destroyed by fire, either at the time of the making of the policy, or at the time of the fire."

The proof in the cause is, that the appellee was in possession of the property, claiming and occupying it as its owner. This is *prima facie* evidence of title. "A person in possession of land is *prima facie* presumed to be seized in fee." 1 *Phillips on Evidence*, 646, *and note*. In the absence of proof of an outstanding title in others, or any incumbrance upon the

property, this *prima facie* presumption of a seizin in fee, growing out of the occupation by the appellee as owner of the property, was sufficient to show an insurable interest therein, and consequently there was no error in rejecting the tenth prayer of the appellant.

There appearing to be no error in the rulings of the Court below, we affirm the judgment.

*Judgment affirmed.*

(Decided 22d May, 1872.)