BROWN v. THE AMERICAN CENTRAL INS. CO.

1. **Fire Insurance:** DELIVERY OF POLICY: WHAT IS NOT. Where defendant's agent made out a policy of fire insurance to plaintiff, and placed it in the hands of a third party until he could learn whether defendant would accept the risk or not, and the defendant refused to accept it, *held* that there was no delivery of the policy, and no consummated contract of insurance, even though the agent at the time received the premium from the plaintiff, with the understanding that, if the defendant refused the risk, the agent was to endeavor to effect the insurance in another company.

*Appeal from Marshall Circuit Court.*

FRIDAY, DECEMBER 17.

THIS is an action upon a policy of insurance against the

loss of certain property by fire. There was a trial by jury, and a verdict and judgment for plaintiff. Defendant appeals.

*Caswell & Meeker,* for appellant.

*Brown & Carney* and *O. L. Binford,* for appellee.

ROTHROCK, J.—The plaintiff was the owner of what he called an "Automatic Show," and in connection therewith he had some stuffed snakes and some live snakes in cages, two bass-drums, a snare-drum and an organette. The automatic show was a contrivance made upon a frame of pine wood, in which there were belts, which ran over pulleys, and upon the belts were little blocks of wood or images, which would pass in review by turning a crank. There was a muslin screen in front to keep the machinery from view, and persons admitted to the show looked through a small aperture at the sights thus exhibited. A red light was thrown upon the moving scene, and at a certain point in the exhibition the machinery would touch a trigger, and fire off a little toy cannon, and beat a drum. This whole outfit was stored in a large room in a wooden building across an alley from a blacksmith shop, in the city of Marshalltown, on the tenth day of April, 1884 and the plaintiff and his wife were living in the same room The show was in winter quarters, or not on exhibition because the snakes were shedding their skins. The record shows that it was in this state of "masterly inactivity" for one or other of the above reasons.

On said tenth day of April the plaintiff made application to J. B. Statler, an agent of the defendant, for a policy of insurance against loss by fire upon the above described property. He was advised by Statler that he had no authority to insure snakes, and he doubted whether any company he represented would insure the other property. But, upon thinking the matter over, he filled up and signed a policy in the defendant company, covering all the property but the snakes. The amount of insurance named in the policy was $1,000.

Statler and the plaintiff went to the blacksmith shop across the alley from the building in which the property was stored, and left the policy with the blacksmiths, to remain in their custody until Statler could communicate with the defendant company, and ascertain whether the risk would be accepted. This was on Saturday. On the following Monday morning, at about five o'clock, a fire broke out in the room in which the property was stored, and some of the cages were burned up, and the automatic arrangement was scorched to some extent. The defendant refused to accept the risk, and Statler went to the blacksmith shop and obtained possession of the policy on the same day of the fire. The place of business of the defendant company is in St. Louis, Missouri. The jury awarded the plaintiff damages in the sum of $1,000.

One ground urged for a reversal of the judgment is that the evidence does not show that the policy was at any time delivered to the plaintiff. There are many other errors assigned and urged, but we do not think it necessary to consider them. We think that the verdict should have been promptly set aside because there was no evidence to support it. The theory of counsel for appellee is that, when the policy was placed in the custody of the blacksmiths, it became binding on the defendant until such times as it should cancel it. But the evidence shows conclusively that it was deposited to remain until it should be ascertained whether the company would accept the risk. The plaintiff wanted his property insured for one month, and it is true he paid Statler the premium for that time, but this was paid with an understanding that, if the company did not accept the risk, Statler was to take the policy back, and endeavor to effect insurance in another company.

Much consideration appears to have been given at the trial to certain evidence to the effect that the blacksmith refused to deliver the policy to Statler until he promised to deliver it to Brown. This is denied by Statler, and it is wholly immaterial whether he made the promise or not. A

delivery of the policy to the plaintiff by Statler would have availed the plaintiff nothing, because the company had refused to accept the risk. No court or jury would be warranted in finding that there was any delivery of this policy to the plaintiff, nor to any other person for him. He claims that he had it in his hands. This is wholly immaterial, unless it was put into his hands as a binding contract upon the defendant.

We confess that we do not have the patience to set out the evidence upon which the verdict is founded. It is enough to say that it utterly fails to show that any binding contract of insurance was made.

REVERSED.