Mr. Justice Shepard
delivered the opinion of the Court:
1. This suit was brought by Albert A. Wilson and John B. Larner, trustees, upon two policies of insurance covering $1,000 on certain buildings and $1,000 on machinery of the Ivy City Brick Company for one year from April 17, 1895. Both policies were made payable to said trustees as their interest might appear.
The policies are simple contracts of the standard form, *19 two of the stipulations of which, only, are of any importance in. the determination of the case. These are: (1) “This policy shall be canceled at any time at the request of the insured; or by the company by giving five days’ notice of such cancelation. (2) This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have the power to waive any provision or condition of this policy except such as by the terms of this policy may be subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.”
An agreed statement was made of the facts that each party could prove, and with a reservation of the right of exception to all rulings of the court made thereon, the case was thereon submitted, and judgment was entered for the defendant.
2. From the agreed statement it appears:
(1) That Tyler. & Rutherford, insurance brokers, were requested by the Ivy City Brick Company to obtain insurance upon its property for the sum of $10,000; and that they applied to Barrett, the local agent of defendant at Washington, for policies covering $2,000 of the risk.
(2) Said Barrett stated to said Tyler & Rutherford that the proposed risk was a special hazard, and that he doubted his authority to accept it before reference to his principal, but that he would issue policies amounting to $2,000, equally divided on the buildings and machinery, upon the condition that the same should be held by the said Tyler *20 & Rutherford, and not delivered to their principals until the decision of the Hartford Fire Insurance Company on the acceptance of the risk was duly had, and should be subject to immediate cancelation (the 5-days’ notice in the policy conditions being waived) by notice that said company rejected the risk.
(3) This condition was accepted by said Tyler & Rutherford, and the two policies of insurance in the declaration set forth were thereupon written and placed in their hands.
(4) On April 27, 1895 — ten days after the delivery of the policies aforesaid — defendant’s special agent came to Washington and informed Tyler & Rutherford that defendant “ refused to carry the risk, and ordered the cancelation of said policies.” On the same day Barrett met Tyler — who had negotiated the insurance and had the policies — and notified, him that the defendant ordered their cancelation. Tyler responded: “All right; send up and get them.”
(5) Barrett sent three times to Tyler & Rutherford, for the policies, but did not obtain them, because, as his messenger was informed, Tyler, who had charge of the policies, was absent and would have to be seen.
(6) Barrett became ill and did not appear at his office for some days; but he had immediately ordered his entry clerk to note on the register of these policies : “ Canceled by order of Company.” And this was done, but the date does not appear.
(7) On May 1, according to custom, accounts between Barrett and Tyler & Rutherford were settled, but no charge for premiums was presented or made; the policies being treated as dead.
(8) The existence of the policies was not made known to the insured or any one interested therefor, until May 16, 1895, when it became possessed of them. Nor had the insured any knowledge of the transaction between Barrett and Tyler & Rutherford.
(9) The policies, until May 16, 1895, remained in the *21 office of Tyler & Rutherford along with some other policies that had been obtained under the original order.
(10) On May 16, 1895, a clerk of Tyler & Rutherford was ordered by them to make up the account for premiums due on the policies obtained for the Brick Company and put them in a package for delivery. The package, including the policies sued on, was handed, with the' account, by Tyler to the representative of the Brick Company; but Tyler did not examine the package and did not know that the policies were inclosed.
(11) The account included the premium charges for the two policies. The Brick Company’s representative received the package and engaged to pay the account on May 27,1895.
(12) On May 17,1895, the property was destroyed by fire. On the same day, and after the fire, Tyler, averring that he did not know the property had been' destroyed, demanded the return of the two policies of the party to whom he had delivered them, stating that they had been canceled and that he had delivered them by mistake. Later, on the same day, Tyler' & Rutherford gave the same notice and made the same demand of the representative of the beneficiaries of the trust.
(13) The Brick Company directed the holding of the policies ; and sent a check to Tyler & Rutherford for the amount of the account rendered, including the premiums on these two policies. They refused to receive the money for the premiums on these policies, declaring that they were void and had been delivered by mistake, and made up and transmitted a new account for premiums due, omitting these.
3. No question has been raised as regards the fact that no payments of the premiums of the policies had been received by the defendant; it being'conceded that the customary credit and settling arrangements between the respective parties and their agents and brokers were equivalent to payments, under the conditions of the policies, in so far as they may depend thereupon for their validity.
*22 4. The first question raised on the argument relates to the scope of the agency of Tylér & Rutherford for the insured.
That they were agents authorized., by virtue of th'eir employment, to represent the insured in all matters relating to the negotiation of the contracts, and to bind it by their representations and statements until, at least, the agency might be terminated by the final delivery of the executed policies, can not be denied. The particular extent and legal effect of this agency became material, only, in considering the branch of the defense founded on that part of the agreed statement respecting the cancelation of the policies — treating cancelation, as therein used, as the act of terminating or rescinding contracts actually in force until canceled.
From the terms of the agreed statement, it appears that the local agent of the insurer, who was possessed of signed policies and authorized to fill the blanks, deliver them, and bind his principal thereby, regarded the policies as in force, at least, until disapproved by the company, and therefore subject to the reserved power of cancelation, notwithstanding the conditional delivery, hereafter to be considered separately.
As regards the oral waiver of the five days’ notice of cancelation, exacted of. the brokers at the time of their delivery, it is not necessary to consider the effect of the express condition, in each policy, that additional stipulations, or waivers of - those contained, in order to bind, shall be indorsed thereon, because the notice of cancelation, if effective as such, was in fact given more than five days before the loss occurred. The notice of cancelation was given to the brokers, and demand made of them for the return of the policies. None was given to the insured, and it had no knowledge of the fact from any source whatever.
There is nothing in the agreed statement to warrant the conclusion that the brokers’ agency or employment extended any farther than the procurement of the policies. When executed and delivered — assuming for present purposes that *23 the delivery was unconditional and complete — their agency and employment ended. Notice to them of cancelation was not the notice stipulated for in the policies, and was, therefore, ineffectual. Grace v. American Central Ins. Co., 109 U. S. 278, 282.
In that case, it is true that the policy had passed into the actual possession of the insured before the notice of cancelation was given to the broker, who accepted the notice and promised the surrender of the policy; but we can not agree that this fact authorizes any limitation of the broad rule of the decision. It would be inconsistent with the general principles of the law pf agency, applied in that decision, to hold, that because a policy is suffered to remain in the hands of the agent for its procurement, he thereby.becomes the general agent of the insured — for that would be the necessary effect — with power to alter, to rescind and to accept notice of cancelation and bind the insured without his knowledge or consent. To give such effect to the mere possession of the policy, after execution and delivery, would be, not only to revive a limited agency, for no reasonable purpose, but also to extend it and invest it with powers that had not previously been given. Moreover, it would be fraught with great danger to the vast interests dependent upon insurance, without any general, compensating benefit to any other interest.
Merely permitting the policies to remain, for a time and uncalled for, in the hands of the brokers, which is all that this record discloses, is perfectly consistent with the idea of the termination of their agency.
With the receipt of the policy a new relation is created between the insured and the broker, namely, that of depositor and depositary; the possession of the broker becomes, in law, the possession of the insured and nothing more; his sole duty and authority, in the new relation, is to deliver the policy upon demand of the insured, or within a reasonable time without demand.
*24 5. This brings us to the last ground of defense, the one chiefly relied on by the appellant, and upon which the decision was made to turn in the court below. The proposition — probably stated more broadly than is justified by the recitals of the agreed statement — is that the policies were not intended to take effect, or become binding as completed contracts, because of the express condition of their delivery to the brokers.
Now, it is quite clear that the brokers can not be regarded, in any conceivable legal sense, as the agents of the insurer in this matter of delivery, and, it.is fair to add, there has been no such contention. On the other hand, upon principles hereinabove stated, the brokers are to be considered as the agents of the insured for all purposes connected with the negotiation and final delivery of the executed policies; and the question will, therefore, be considered as if the com ditional delivery had been made directly to the insured without their intervention.
The research of counsel has not produced a reported case in which the question of a conditional delivery of a policy of insurance, as here presented, has been determined. The case of Insurance Co. v. Webster, 6 Wall. 129, cited on behalf of the appellant, can not be regarded as controlling. There, the policy was accepted from an agent in Michigan, upon a condition in writing, executed by the insured, that it should not take effect until approved by the general agent at Buffalo, New York. The premium had been paid at the time of delivery. The general agent disapproved the risk and ordered the issuing agent to return the premium and cancel the policy. This he failed to do, whilst engaged in an attempt to have the policy finally approved. Whilst this was going on the loss occurred. The premium was then tendered to the insured, with notice that his application had been rejected. The court said that, from all the facts and circumstances in evidence, in connection with the authority and conduct of the two agents, it was apparent that, *25 notwithstanding the strict letter of the executed condition of receipt; the policy was not intended to be a nullity pending the matter of its approval. Hence, as there was no notice to the insured and no tender of return of premium until after the loss, the policy was declared enforceable. In the case at bar, the premium, if charged at all to the brokers, was charged off, the risk was rejected within an apparently reasonable time, and notice was given to them while they held the policy under the condition, if that condition be available at all.
Nor are the decisions cited on behalf of the appellee any more controlling.' These are: Quebec Bank, etc., v. Hellman, 110 U. S. 178 ; Belleville Bank v. Borneman, 124 Ill. 205; Merchants’ Ex. Bank v. Luckow, 37 Minn. 542; Benton v. Martin, 52 N. Y. 570; Reynolds v. Robinson, 110 N. Y. 654; Brown v. American Central Ins. Co., 70 Iowa, 390; Harnickell v. N. Y. Life Ins. Co., 111 N. Y. 390.
The first five of the foregoing cases need not be reviewed, for the doctrine enounced in each, so far as they bear upon the question to be decided, is to be found in a recent decision of the Supreme Court of the United States, the opinion in which reviews some of them. Burke v. Dulaney, 153 U. S. 228. In that case suit was brought by the payee of a negotiable promissory note, in the usual form, against the maker. Evidence was held admissible to show that the note was delivered upon a distinct verbal agreement that it should not become operative as a note until the maker could examine the property for which it was given, and determine whether he would conclude the purchase. There was no other writing relating to the contract of purchase. The evidence did not tend, it was said, to contradict or vary a written contract, but to show that it never went into effect, never in fact became the contract of the parties, because the condition upon which it was to become operative had not transpired.
In Brown v. American Ins. Co., supra, the policy was not *26 delivered to the insured, but was deposited with a third person to hold until notified of acceptance by the company. His possession was in law that of the company. Had that course been pursued in this case, there would be little difficulty.
In Harnickell v. N. Y. Life Ins. Co., supra, the facts are peculiar.
The defendant’s agent entered into negotiations with Harnickell, who was then heavily insured- in other companies. He agreed to take two large policies in the New York Life, provided the agent would give certain credits upon the first premium, and procure a settlement or surrender of his existing policies, upon terms satisfactory to Harnickell. Pending the negotiations for this surrender, the agent brought the new policies to Harnickell with the notes for him to execute. The agent had no power to amend or add any condition to the policies.
Harnickell agreed to deliver his notes and to receive the policies, upon the express condition that the agent was to complete the- performance of the agreement respecting the policies in the other companies.
The terms of this condition were fully expressed in writing signed by both Harnickell and the agent; butthefact was not communicated by the agent to the company. The agent failed to complete the arrangement of the old policies and declined to do so. Harnickell then returned the policies and demanded the return of his notes.
This being refused, he brought his action to compel the surrender of his notes, and was awarded the relief prayed for. The court said the question was not in respect of the agent’s power to modify the contract contained in the policies, but of Harnickell’s right to refuse to receive them as completed contracts, save upon the condition imposed. He could not be compelled to accept, and had the right, uncontrolled by any limitations upon the agent’s power, to receive the policies subject to the condition. That condition *27 was evidenced by writing signed by both parties. Believing that the agent was acting in good faith, and with the knowledge of his principal, it would seem that Harnickell could scarcely have done more to protect himself from possible imposition.
The facts of that case and the character of the action distinguish it from the case at bar.
In Burke v. Dulaney, supra, the transaction of purchase and sale was evidenced by no writing other than the simple note given in payment of the agreed consideration; and the decision was, that, in such ease it might be shown by parol evidence that the note was delivered upon a condition precedent. In Reynolds v. Robinson, 110 N. Y. 654, one of the cases cited above, it was held, in following the general doctrine of an earlier case, that the delivery of a’ contract for the sale of lumber might be shown to have been made upon condition. But the court said : “ The rule should be cautiously applied to avoid mistake or imposition, and confined strictly to cases within its reason.”
The contracts and instruments involved in those cases are very different from the policies of insurance sued upon. These are elaborate instruments and abound in stipulations and conditions. Among these, note the following, that is embraced in the general clause recited in the preliminary statement: “ This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto.”
This and other clauses limiting the powers of agents and requiring all additional terms and conditions to be indorsed in writing upon the policies, were devised by the Insurance Company, itself, to prevent questions concerning the conditions upon which its policies shall be “made and accepted ’ from being left to the vagueness and uncertainty of oral proof.
The general clause limiting the powers of agents to make *28 new conditions, waivers, etc., was said, by the Court of Appeals of Maryland, in a case which does not decide the question here presented, to refer “to those conditions and provisions of the policy which enter into and form a part of the contract of insurance and are essential to make it a binding contract between the parties; and which are properly designated as conditions.” Franklin Fire Insurance Co. v. Chicago Ice Co., 36 Md. 102, 120.
It has also been held that, where the policy contained an acknowledgment, without qualification, or additional condition changing its effect, of the receipt of the premium, it was not competent to show by oral proof that the premium had not been paid, and that the policy, for that reason, had not taken effect. Basch v. Humboldt, etc., Insurance Co., 35 N. J. L. 429, 431; Consolidated Ins. Co. v. Cashow, 41 Md. 59, 76.
The condition in this case was one in addition to those contained in the policies and upon which they were “made and accepted,” and was not in writing indorsed upon them or executed simultaneously therewith.
Our conclusion is, that by reason of the nature and terms of the policies, it is not competent to show their delivery to the insured upon a verbal condition, making their existence as contracts depend upon the subsequent ratification of another agent:
In the absence of direct and controlling authority, we think this conclusion embodies the safer rule in such cases. It prevents the uncertainty and the opportunities for controversy and imposition that would naturally follow from making the binding effect of a completely executed and delivered policy depend upon verbal conditions of delivery. And any inconveniences or hardships that might follow the adoption of this view — beyond its enforcement in the particular case — can be readily and certainly avoided, either by the agent’s indorsement of the condition on the policy, or else refusing to issue it at all before obtaining the consent of Ms principal.
*29 It follows that the judgment must be reversed, with costs, and the cause remanded with direction to enter judgment for the plaintiffs upon the stipulation of the agreed case. It is so ordered. Reversed.