Mr. Chief Justice Alvey
dissenting.
On June 23, 1900, a 'motion for a rehearing was made on behalf of the appellee. On October 20, 1900, the motion was granted, and on February 6, 1901, the cause was reargued by Mr. Wolf, Mr. Rosenberg, and Mr. Paul for the appellee, and Mr. Blair and Mr. Thom for the appellants.
On March 13, 1901, the opinion of the court on the hearing was reaffirmed, Mr. Justice Shepard delivering the opinion of the Court:
This case has been reargued on motion granted because of the novelty and importance of the question upon which the decision had been made to turn, and in the hope that some additional authority might be found that would aid in its solution. None such has been called to our attention or developed by our own research. The propositions of the argument, which have been carefully considered, are substantially the same, though elaborated, as those upon which the case was originally submitted. Whilst confessing that the question is one of difficulty, we see no reason to change the conclusion formerly reached, and think it unnecessary to add anything to the opinion then delivered. Readopting that opinion as expressing the views of the majority of the court, the order then made reversing the judgment and remanding the cause for entry of judgment on behalf of the plaintiffs, will not be disturbed.
Mr. Chief Justice Alvey dissenting:
I am constrained to dissent from the majority opinion filed in this case. I can not for a moment appreciate the *30 reasoning upon which the judgment of the court below is reversed. Ido not see that the plaintiffs, under the agreed state of facts, have the shadow of a ground for recovery on the policies of insurance upon which they have sued. A valid policy of insurance, like all other contracts, must be the result of concurring minds of the parties thereto; there must be an aggregatio mentium, or otherwise it is not binding.
The agreed statement of facts in this case would seem to put the question beyond all doubt that the policies were never in fact delivered to the plaintiffs or their agents as completed contracts. It is agreed that Barrett, the agent of the defendant, stated to Tyler & Rutherford, the brokers acting for the plaintiffs, that the proposed risk was a special hazard, and that he doubted his authority to accept it before reference to his principal, but that he would issue policies amounting to $2,000, equally divided on the buildings and machinery, upon the condition that the same should be held by Tyler & Rutherford, and not delivered to their principals until the decision of the defendant company on the acceptance of the risk was duly had, and should be subject to immediate cancelation by notice that said company rejected the risk. It is also agreed that on the 27th'of April, 1895, Royce, the special agent of the defendant, known by Tyler & Rutherford to be the representative of the defendant company, having authority to inspect, confirm, or cancel risks for and in behalf of the company, went to the office of Tyler & Rutherford and informed them that the defendant company refused to carry the risk and ordered the cancelation of said policies; and on the same day the said Barrett, being on his way to the office of Tyler & Rutherford, met R. K. Tyler, a member of that firm, who had made the negotiation for the policies, had the same in his custody, and had exclusive charge of the matter, and announced to him that the company ordered their cancelation; to which the said Tyler responded, “All right; send up and get them.” This was all before the fire occurred. That the policies were *31 ineffectual because they were incomplete contracts was well understood and fully recognized by all the agents of both, parties who participated in the transaction.
Under such circumstances, I do not see upon what principle the insurance company can be held responsible on the policies. There is no question of estoppel involved, for the plaintiffs never knew of the existence of the policies, and therefore were never under the supposition that they were protected by them until sometime after the fire occurred, on the 17th of May, 1895. The policies came to the possession of an agent of the plaintiffs by what is admitted to be a clear mistake on the part of an accounting clerk of Tyler & Rutherford, the insurance brokers, and with no intention on the part of Tyler & Rutherford to deliver over the policies to the plaintiffs or their agents.
The law upon this subject is very clear and may be found in most of the books that treat of the contract of insurance. In May on Insurance, Sec. 56, the result of numerous cases cited by the author is stated to be that if there has been no payment of the premium (as is the case in the present instance) and no delivery in fact of the policy, the contract is prima facie incomplete, and he who claims under it must show that it was the intention of the parties that it should be operative notwithstanding these facts. The presumption of law is that the delivery of the policy and the payment of the premium are dependent upon each other; but this presumption may be rebutted by showing a waiver of the payment or such other facts as go to show the intention and understanding of both parties that the policy shall be valid, as if delivered, notwithstanding the non-payment of the premium ; and an actual delivery obtained by misrepresentation is no delivery to give effect to the contract. The mere manual possession of the policy is of little consequence, whether it be in the hands of the insurers or the insured. Its possession by the insured makes a prima facie case for him, subject to be met by proof that it was never delivered by *32 the consent of the insurers, while its possession by the insurers makes a prima facie case for them, subject to be met by .proof that; though not transferred, it was intended by the parties to be a valid contract without further action by either, and so, in legal contemplation, there was a delivery. This principle is exemplified by a number of cases cited by the author.
The question whether a contract has been delivered or accepted or not is always one of a preliminary character that arises in advance of questions as to the construction of the contract itself, and most generally it is one that depends upon parol evidence for its determination. Therefore, whether an instrument sued upon, being either deed or simple contract, policy of insurance, or other written instrument, came into the hands of the plaintiff without any absolute and final delivery by the party sought to be charged thereby, is a question upon which parol evidence is always admissible. 1 Greenl. Ev., Sec. 284; Leppoc v. National Bank of Maryland, 32 Md. 136, 144; Clark v. Gifford, 10 Wend. 311; United States v. Leffler, 11 Pet. 86; Couch v. Meeker, 2 Conn. 302; McFarland v. Sikes, 54 Conn. 250; Burke v. Dulaney, 153 U. S. 228. And where an instrument is signed with an understanding that it is not to be delivered except upon the performance of a certain condition, or upon the happening of a certain event or contingency, this may be shown by parol, in avoidance of the effect of the instrument. Black v. Lamb, 1 Beasley, 108; Burke v. Dulaney, supra, and cases cited.
The contention that because the policy contains the provision that “this policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon, or added thereto, and no officer, agent, or other representative of the company shall have the power to waive any provision or condition of this policy except such,” etc., therefore parol evidence is not admissible to *33 show the circumstances under which the policies were Written and placed in the hands of the insurance brokers, to be retained by them until further notice as to whether the risk was accepted, because, as contended, such evidence would vary or alter the terms and conditions of the policy, can not for a moment be supported. Such contention simply begs the whole question. It assumes that the risk had been accepted by the defendant company, and that the policies had been delivered to the plaintiffs or their agents as completed contracts. That is the very question in dispute. Until the policies were in fact issued and delivered as executed contracts the terms and conditions contained in them could have no operative effect whatever. This would seem to be well settled beyond question. Benton v. Martin, 52 N. Y. 570, 574; Harnickell v. N. Y. Life Ins. Co., 111 N. Y. 390 ; Brown v. Am. Cent. Ins. Co., 70 Iowa, 390.
Without adding anything more, I am, for the reasons briefly stated, decidedly of opinion that the policies sued on never attached to the property, and that the court below was right in entering judgment for the defendant on the statement of agreed facts, and that that judgment ought to be affirmed.
An application to the Supreme Court of the United States for a writ of certiorari was allowed by that court on April 15, 1901.