# HARTFORD FIRE INSURANCE COMPANY *v.* WILSON.

## CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

### No. 79. Argued November 10, 1902.—Decided January 5, 1903.

Where a policy of insurance is written at the request of a broker, and delivered to him by the agent of the company on his promise not to regard it as binding until the company shall have inspected and accepted the risk, the policy being subject to immediate cancellation, and the company thereafter promptly inspects and rejects the risk, and the agent of the company so notifies the broker who thereupon agrees to return the policy, and no premium is charged or paid as between the broker and agent, there is no final and absolute delivery of the policy, but the delivery is conditional only; and, as no completed contract of insurance is ever actually entered into, the fact that the policy, by inadvertence on the part of the broker, is not returned as promised to the agent, but is sent to the person named therein as insured, will not render the insurance company liable in case the building insured is destroyed by fire, even though the policy came into the hands of the insured prior to the fire and without any knowledge on his part of the action of the company or the mistake made by the broker in delivering the policy.

THIS case was commenced in the Supreme Court of the District of Columbia by Albert A. Wilson and John B. Larner, trustees, against the Hartford Fire Insurance Company to recover upon two policies of insurance, charged to have been executed and delivered by the company to the plaintiffs on April 17, 1895, and insuring certain property of the Ivy City Brick Company, for the benefit of the trustees, the plaintiffs. The declaration alleged the destruction by fire of the property on May 17, 1895, notice of the loss to the company, and its refusal to pay. After the pleadings had been completed the case was submitted to the court upon an agreed statement of facts. The facts agreed upon, so far as they are pertinent to the questions presented, are as follows :

" 1. Prior to April 17, 1895, C. C. Duncanson, treasurer of the Ivy City Brick Company of the city of Washington, D. C., authorized the firm of Tyler & Rutherford, of said city, at their

request, to place insurance for the company, loss, if any, payable to Albert A. Wilson *et al.*, trustees under a deed of trust given by said company, as interest might appear, said Duncanson averring the amount to be placed to be the sum of ten thousand dollars ($10,000), and Tyler & Rutherford averring a much larger sum.

"On said April 17, 1895, said Tyler & Rutherford, under the aforesaid authority, proposed to one Barrett, an agent, at said city of Washington, of the Hartford Fire Insurance Company, of Hartford, Connecticut, for insurance on properties of the said Ivy City Brick Company.

"2. Said Barrett stated to said Tyler & Rutherford that the proposed risk was a special hazard, and that he doubted his authority to accept it before reference to his principal, but that he would issue policies amounting to $2000, equally divided on the buildings and machinery, upon the condition that the same should be held by said Tyler & Rutherford, and not delivered to their principals until the decision of the Hartford Fire Insurance Company on the acceptance of the risk was duly had, and should be subject to immediate cancellation (the 5 days' notice in the policy conditions being waived) by notice that said company rejected the risk.

"3. This condition was accepted by said Tyler & Rutherford, and the two policies of insurance in the declaration set forth were thereupon written and placed in their hands.

"4. A short time thereafter, to wit, on the 27th day of April ensuing, on the first inspection visit to Washington after the issue of said policies, William R. Royce, the special agent of the Hartford Fire Insurance Company, known by said Tyler & Rutherford to be the representative of the company, having authority to inspect, confirm or cancel risks for and in behalf of said company, went to the office of said Tyler & Rutherford and informed them that the Hartford Fire Insurance Company refused to carry the risk and ordered the cancellation of the said policies, and on the same day the said Barrett, being on his way to the office of Tyler & Rutherford, met R. K. Tyler, a member of that firm, who had made the negotiation for the policies, had the same in his custody, and had exclusive charge

of the matter, and announced to him that the company ordered their cancellation ; to which the said Tyler responded, ' All right; send up and get them.'

" 5. The said Barrett sent three times to the office of Tyler & Rutherford for the policies. Each time his employé was informed by one of the clerks of Tyler & Rutherford that Mr. R. K. Tyler, who had charge of the policies, was absent from the office, and they would have to see him.

" 6. Said Barrett was taken sick and did not appear at his office for some days, but had immediately ordered the entry clerk to make the customary entry in such cases on the register where the policies were noted, ' Canceled by order of the company,' which was accordingly done.

" 7. On the first day of May ensuing the customary mutual accounts of business between the offices of said Barrett and said Tyler & Rutherford were settled, and the two policies were treated as dead, no charge for their premiums being presented on the one hand or asked for on the other.

" 8. The existence of the two policies was never reported to the said Duncanson nor to any one connected with said Ivy City Brick Company by mortgage or otherwise, nor did he or they have any knowledge of or connection with said policies until they came into the hands of said Duncanson on May 16, 1895, and at no time prior to the fire had any party connected with or interested, by mortgage or otherwise, in the Ivy City Brick Company any knowledge of the transaction between said Barrett and said Tyler & Rutherford hereinbefore set forth.

" 9. The two policies had been overlooked by Tyler & Rutherford and lay in the drawer along with a number of other policies issued by other insurance companies which had been secured by said Tyler & Rutherford for the purpose of filling the above order. Of this fact no one connected with the Ivy City Brick Company in any interest whatever was informed until after the fire.

" 10. Tyler & Rutherford had found great difficulty in procuring the desired insurance, and aver that the entire amount proposed was never secured. Some of the agencies insisted on the same conditions as to cancellations as those fixed between

said Barrett and said Tyler & Rutherford, and cancellations by orders of the different companies were so frequent that said Tyler & Rutherford could not at any time before May 16 know how much of binding insurance was in hand. Of all these facts the said R. K. Tyler avers that he informed the said Duncanson in the progress of the effort to secure insurance and some time prior to the fire. The said Duncanson denies that he had information as to any of these facts at any time prior to the fire, except the fact that there was difficulty in procuring the desired insurance. No specific mention, however, of the two policies of the defendant was made to said Duncanson or any one connected in any interest with the Ivy City Brick Company.

"11. On the 16th of May, 1895, a clerk of Tyler & Rutherford was directed to make up the account of the policies on hand and put them in a package for delivery. The two policies of the Hartford Fire Insurance Company, which had been overlooked and were then lying in the same drawer with the other policies, taken in fulfilment of this order, were included in the account and placed in the package with said other policies by said clerk of Tyler & Rutherford without the personal knowledge of said Tyler & Rutherford, and both were handed to said Duncanson by said R. K. Tyler, said Tyler not examining the same. Said Duncanson took the package and engaged to pay the account on the Monday week following, to wit, May 27, 1895.

"12. On the morning of May 17, after the fire, which occurred about one o'clock A. M., on that day, said R. K. Tyler came to said Duncanson and asked for the return of the two policies, stating that they had been handed him by mistake and the fact of their previous cancellation, said Tyler averring that he did not know that the property described as insured had been destroyed. Later, on that day, when the fact was known that the property described in the policies was destroyed, Tyler & Rutherford, by telephone, informed the Washington Loan and Trust Company, the beneficiary of the trust held by Wilson *et al.*, trustees, that the Hartford policies had been delivered by mistake and requested it to send back the two policies, and were answered that they were locked up, but would be returned the next morning.

" Of this request and answer by the telephone it is agreed that the Ivy City Brick Company knew nothing at the time, and when informed of said request directed that the policies be not returned.  The policies were not returned, and sundry correspondence followed between said Tyler & Rutherford, said Duncanson, and the Washington Loan and Trust Company, in the course of which said Duncanson sent a check to Tyler & Rutherford for the settlement of the account above referred to. Tyler & Rutherford refused said settlement, stating that the two policies of the Hartford were void and had been sent in by mistake, and returned the check, with a corrected account, excluding these policies.  The correspondence between said Duncanson, said Tyler & Rutherford, and said Washington Loan and Trust Company and the policies sued on may be filed with this statement and considered as part of this agreed case."

The policies, which are alike, contained the following provisions :

" *Underwriters' Policy.*

" No. 20,229. ·                                    $1000.

" By this policy of insurance the Hartford Fire Insurance Company, of the city of Hartford, in the State of Connecticut, in consideration of the stipulations herein named and of seventeen. and 50–100 dollars premium, does insure Ivy City Brick Company for the term of one year from the 17th day of April, 1895, at noon, to the 17th day of April, 1896, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding one thousand dollars, to the following-described property, while located and contained as described herein, and not elsewhere, to wit : Ivy City Brick Company. $1000.  On machinery of every description, dryers, cars, apparatus, equipments and tools, contained in their one-story brick and frame structure with metal roof (about 118 × 165 feet) and one-story frame and brick addition with metal roof.  Situate on their tract known as ' Ivy City,' about one mile northeast of Washington, D. C.  Other concurrent insurance permitted without notice until required.  Loss, if any, payable as interest may appear to Albert A. Wilson and John B. Larner, trustees.  (Mortgagees' clause with full contribution attached.)

Attached to and made a part of policy No. 20,229 of the N. Y. Underwriters' agency.

"THOS. F. BARRETT, *Agent.*

\*　\*　\*　\*　\*　\*　\*　\*

"This policy shall be canceled at any time at the request of the insured, or by the company, by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate ; except that when this policy is canceled by this company by giving notice it shall retain only the *pro rata* premium.

\*　\*　\*　\*　\*　\*　\*　\*

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have the power to waive any provision or condition of this policy except such as by the terms of this policy may be subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

"In witness whereof, this company has executed and attested these presents this seventeenth day of April, 1895.

"This policy shall not be valid until countersigned by the duly authorized agent of the company at Washington, D. C.

"GEO. L. CHASE, *President.*

"P. C. ROYCE, *Secretary.*

"THOS. TURNBULL,
"*Ass't Secretary.*

"CHAS. E. CHASE,
"*2d Ass't Secretary.*

"Countersigned by—

"THOS. F. BARRETT, *Agent.*"

Upon these facts judgment was on December 13, 1899, entered in favor of the defendant.   This judgment was taken on appeal to the Court of Appeals of the District and by that court on June 12, 1900, reversed and the case remanded with directions to enter judgment for the plaintiffs.   17 D. C. App. 14. Thereupon the case was brought here upon certiorari.   181 U. S. 617.

*Mr. Samuel B. Paul* for petitioner.   *Mr. Alexander Wolf* and *Mr. Maurice D. Rosenberg* were with him on the briefs.

*Mr. Henry P. Blair* for respondent.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The question is whether at the time of the fire there was a valid and subsisting contract of insurance.   The negotiations in respect to the policies were not between the insurer and the insured directly, but between agents of each.   As shown by paragraphs 2 and 3 of the agreed statement of facts, the agent of the insurer delivered the policies to the agent of the insured upon a condition, which was agreed to by both.   That condition failed, notice of which was given by the former to the latter, accepted by the latter as putting an end to the policies, and the former notified to come and get the policies.   Several times the former went to the office of the latter to receive the policies, but failed to obtain them owing to the absence of the latter from his office.   Both agents treated the policies as dead, and no charge for premiums was presented on the one hand or asked for on the other.   Unintentionally the policies were on the day before the fire handed in a package with other papers to the treasurer of the Ivy City Brick Company.

In view of these facts thus agreed upon the question broadly stated above narrows itself to one whether there can be a conditional delivery of a policy of insurance?   If there can be, then (as there is no question of estoppel and as there was a failure of the condition) these policies had no binding force at

the time of the fire. That as to contracts generally there can be a conditional delivery, and that the failure of the condition prevents the contract from taking effect is not doubted. In this court the question is at rest. *Burke* v. *Dulaney*, 153 U. S. 228, 238. That was an action brought on a promissory note executed and delivered by the defendant to the plaintiff, and it was held, reversing the trial court, competent to show a parol agreement between the parties made at the time of the delivery of the note that it should not become operative as a note until the maker could examine the property for which it was given and determine whether he would purchase it. Mr. Justice Harlan, delivering the opinion, reviewed several authorities and summed up by stating that " according to the evidence so offered and excluded the writing in question never became, as between Burke and Dulaney, the absolute obligation of the former, but was delivered and accepted only as a memorandum of what Burke was to pay in the event of his electing to become interested in the property, and from the time he so elected, or could be deemed to have so elected, it was to take effect as his promissory note, payable according to its terms. His election, within a reasonable time, to take such interest, was made a condition precedent to his liability to pay the stipulated price. The minds of the parties never met upon any other basis, and a refusal to give effect to their oral agreement would make for them a contract which they did not choose to make for themselves." See also *Quebec Bank of Toronto* v. *Hellman*, 110 U. S. 178.

If an instrument containing an absolute promise to pay may be conditionally delivered, it is difficult to perceive any good reason why an instrument containing a promise to pay upon a contingency may not likewise be conditionally delivered. If the failure of the condition in the one case prevents the instrument from becoming definitely operative, why not in the other? The rule as to conditional delivery and the effect of a failure of the condition has not been limited to promissory notes, but has often been applied to other instruments, as, for instance, a deed of land; *Leppoc et al.* v. *National Union Bank of Maryland*, 32 Maryland, 136.; *Clark* v. *Gifford*, 10 Wend. 310; a

sight draft, *Benton* v. *Martin*, 52 N. Y. 570; a guaranty, *Belleville Savings Bank* v. *Bornman*, 124 Illinois, 200; *Merchants' Exchange Bank* v. *Luckow*, 37 Minnesota, 542.

But, coming closer to the case at bar, let us see what has been decided in respect to insurance policies. In *Brown* v. *The American Central Insurance Company*, 70 Iowa, 390, the plaintiff applied to an agent of the defendant for a policy of fire insurance. The agent doubted his authority to insure the particular property but executed a policy therefor, and, with the consent of the plaintiff, placed it, after receiving the premium, in the hands of a third party to hold until he could communicate with his principal and ascertain whether the risk would be accepted. The defendant refused to accept the risk. The property was destroyed by fire before the notice of its refusal had been received. The court held that there was no delivery of the policy save upon the condition that the insurance company accepted the risk, and that, as it did not accept it, the policy never became operative.

In *Millville Mutual Marine & Fire Insurance Company* v. *Collerd*, 38 N. J. Law, 480, Perrin, the lessee of Collerd, the owner of a mill, applied for fire insurance, as required by his lease. Three policies, each in a different company, were sent him by the insurance agent to whom he had applied. He retained the policies, paying the premium on two, and sent word to the agent to the effect that he would look into the standing of the other company, and if satisfied about that would pay the premium on its policy. The property having been destroyed by fire before any notice or other action by him, he went to the agent and offered to pay the premium, which the latter declined to accept. In an action on the policy it was held that the company was not liable. In the course of the opinion the court said (p. 483) that Perrin "merely held the policy in his possession until he could examine it; or, to use his own expression, 'look into the standing of the company.' He distinctly refused to accept the policy and settle for it, until he was satisfied. This was, in effect, postponing the delivery, the acceptance, and the payment of the premium until a future time, and to this the company, by their agent, Buckley, assented.

The condition for prepayment remained, and the company was entitled to notice of acceptance and prepayment of the premium before the contract for insurance was complete. After Perrin had rejected the policy it remained in his hands, not as an executed contract of insurance, but as a proposal to insure which he must accept by payment of the premium, before the company would be bound."

In *Harnickell* v. *New York Life Insurance Company*, 111 N. Y. 390, the plaintiff, who was the owner of several policies of life insurance issued by different companies, was applied to by the agent of the defendant to take out policies in his company. The result of the negotiations between the plaintiff and the agent was an agreement to take out policies in the defendant company, providing he could surrender the policies he already had to the companies issuing them and obtain satisfactory surrender values thereof. In pursuance of an application duly prepared by the agent and signed by the plaintiff, the defendant company issued two policies, and sent them to its agent. The latter, under the agreement, delivered them to the plaintiff, who gave two notes and a check in payment therefor, which were returned by the agent to the company. The plaintiff, having after some effort failed to make any satisfactory arrangement with the other companies, returned the policies to the defendant and demanded a surrender of his notes and the check. The company declining to make such surrender, this action was brought, and it was held that the policies were delivered only conditionally, that the condition had failed, and that, therefore, the plaintiff could rightfully surrender the policies and obtain a return of his notes and check. The opinion of the court in that case was delivered by Judge Peckham, now a justice of this court, and in it, after referring to the agreement, it was said (p. 398):

"This, we think, was clearly a condition precedent to the full delivery and acceptance of these policies issued by the defendant, and until such condition precedent was complied with or waived, no fully executed and valid contract of insurance existed between these parties."

See also *Nutting* v. *Minnesota Fire Insurance Co.*, 98 Wisconsin, 26.

In the case at bar the learned justice of the Court of Appeals, who delivered the opinion of the majority, after referring to other cases of conditional delivery, (some of which we have noticed in this opinion,) stated as a reason for distinguishing this case:

" The contracts and instruments involved in those cases are very different from the policies of insurance sued upon. These are elaborate instruments and abound in stipulations and conditions. Among these, note the following, that is embraced in the general clause recited in the preliminary statement: 'This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto.'

" This and other clauses limiting the powers of agents and requiring all additional terms and contitions to be endorsed in writing upon the policies, were devised by the insurance company, itself, to prevent questions concerning the conditions upon which its policies shall be ' made and accepted' from being left to the vagueness and uncertainty of oral proof.

\*      \*      \*      \*      \*      \*      \*      \*

" The condition in this case was one in addition to those contained in the policies and upon which they were 'made and accepted,' and was not in writing endorsed upon them or executed simultaneously therewith.

" Our conclusion is, that by reason of the nature and terms of the policies, it is not competent to show their delivery to the insured upon a verbal condition, making their existence as contracts depend upon the subsequent ratification of another agent."

The argument is that because the policies contained various stipulations restricting the power of the agent, it is incompetent to prove that the contract never came into operative force by a final unconditional delivery. But these stipulations apply only to a contract which has become executed and do not apply where the contract has not been completed by an absolute delivery of the instrument. No instrument could be more absolute than a promissory note, yet it is clear from the

authorities that parol evidence is admissible to explain its possession by the payee, and show that that possession was not the result of a final delivery, but only of one upon condition, and also that the condition failed. Possession cannot be conclusive upon the question of delivery. Otherwise, a possession wrongfully, even feloniously, obtained would bind a party to a contract when, perchance, much remained to be done before the maker was ready to assume the obligations of the contract. There is no stipulation in this policy which either in terms or by implication forbids such a transaction as was in fact had between these two agents. There is no attempt, by parol testimony, to contradict any stipulations of the policy, something which we have recently held cannot be done. *Northern Assurance Company* v. *Grand View Building Association*, 183 U. S. 308. With reference to this question we quote approvingly from *Harnickell* v. *New York Life Insurance Company*, 111 N. Y. *supra*, (pp. 398, 399, 400):

"The provisions contained in the policies, which are above quoted, relate to the policies themselves after they should become executed instruments between the parties. All negotiations had before such event, and all parol agreements between the assured and the agent of the defendant, would have been merged in the contract evidenced by the policies themselves, had the negotiations been carried out as intended, and such policies been absolutely delivered to and accepted by the plaintiff. Hence any oral representation or statements made by the agent of the company, and not contained in the contract of insurance, would have formed no part thereof, and could not have been insisted upon by the plaintiff as against the defendant company. . . . Insurance companies may, with entire propriety, provide in the same manner as the defendant provided in the policies in question, in cases where the contract of insurance becomes executed. There it is highly necessary and important for the company to know exactly how far they are bound and the entire nature of the contract which has been made between them and the assured. But an agreement between an individual and the agent of a company, by which the policy is accepted only upon conditions relating to the same,

and an agreement to hold the policy until the performance of those conditions, or a failure to perform, cannot, as we think, result in any serious inconvenience to the company. But whether that is so or not cannot alter the right of an individual to refuse to be bound by a policy of insurance until he has absolutely received and accepted it."

For these reasons we are of opinion that the facts found show that there was no final and absolute delivery of the policies; that the condition upon which they were deposited with the agent of the insured failed, and, therefore, that at the time of the fire there was no subsisting contract of indemnity between the company and the insured.

*The judgment of the Court of Appeals is reversed and the case remanded to that court with instructions to set aside its judgment and enter one affirming the judgment of the trial court.*

MR. JUSTICE BROWN concurred in the result.