## AMOS–RICHIA v. NORTHWESTERN MUT. LIFE INS. CO.

### (Circuit Court, E. D. Michigan, S. D.)

### No. 8,473.

INSURANCE—ACTION ON LIFE POLICY—EVIDENCE OF DELIVERY.

After a man's death, a policy of insurance on his life, payable to his wife, was found among his papers. There were no canceled internal revenue stamps thereon as required by law at the time of its date, but attached thereto was an envelope containing the requisite stamps, and on the envelope were printed directions that such stamps were "to be attached to the second page of policy No. ———— when put in force," and also that, when affixed, they must be canceled, by the agent by writing the initials of the company and the date thereon, and that, if the policy should be returned to the company before delivery, the uncanceled stamps must accompany it. After the policy was found by the beneficiary, she procured the stamps to be affixed thereto and canceled by the collector of internal revenue, and brought suit thereon. It was not shown that the deceased ever disclosed his possession of the policy to any one, or claimed to have insurance in the company. *Held*, that such facts did not create such a conflict of evidence, as to the essential fact of the delivery of the policy as a completed contract of insurance, as to entitle the plaintiff to the submission of the case to the jury, as against the otherwise uncontradicted evidence on behalf of defendant that it was merely

delivered for examination and comparison with others, and that **no** premium was ever paid thereon.

In Equity.   On motion to direct verdict for defendant.

T. A. E. Weadock, for the motion.
George Donaldson, opposed.

SWAN, District Judge (orally).   The motion here has been ably argued on both sides, and I can conceive nothing which has not been presented that would affect the conclusion to which I have arrived that would be justified by the evidence.   The motion is presented on two grounds:   (1) That there is no evidence of the delivery of the policy sued upon.   (2) There is no evidence of the payment of the first premium which the policy makes a condition precedent to its taking effect.

The facts are, briefly:   That the policy of life insurance sued upon in which plaintiff is named as beneficiary, was found among papers of plaintiff's husband, the insured, after his death.   There is no evidence that he claimed it as his property.   Its possession alone is prima facie evidence, as argued by counsel, that it was rightly in his possession. "Prima facie evidence" means simply that evidence which is sufficient, in the absence of evidence to the contrary, to warrant a judgment, or the direction of the court for recovery in favor of a person having possession.   The place where it was found is prima facie evidence that it was rightfully in the possession of the deceased.   Of what had the insured possession?   It was not, then, the completed instrument here sued upon; it was an imperfect, inchoate obligation.   Speaking of it now apart from the testimony as to the purpose and the rightfulness of the possession, and speaking only with reference to the condition of the instrument, it had not the stamps affixed and canceled as required by law. If issued as a perfect obligation, the law required it to be stamped. The amount of stamps required is not in controversy.   By section 7 of the Internal Revenue Act of June 13, 1898, c. 448, 30 Stat. 452 [U. S. Comp. St. 1901, p. 2292], sometimes called the "War Revenue Act," it is provided that:

"If any person or persons shall make, sign or cause to be made, signed or issued, any instrument, document or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereupon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereon shall pay a fine, * * * and such instrument, document or paper shall not be evidence in any court."

Therefore, primarily, it is the duty of the party issuing such instrument to affix to it, in the manner provided by law, the stamps required by the internal revenue act.   The further duty is imposed upon the party issuing the instrument to cancel such stamps.   That duty is also imposed upon the party receiving the same—the duty of cancellation. The instrument, when found, had attached to it by an external fastening a stamped envelope, inclosing the stamps to be affixed and canceled. The original envelope inclosing the stamps ($2.40) stated in print upon its face that they were "to be attached to the second page of policy No. ——— when put in force," and that:

"The stamps so affixed must be canceled by the agent by writing in ink across the face the initials of the company, and the date. If the policy is returned to the company for any purpose before delivery, the uncanceled stamps must accompany them."

Then followed directions as to the manner of the cancellation of the stamps. Two things are observable about this direction: First, that the instructions that the stamps should be attached is qualified by the words "when put in force." Second, no policy is named. The number of the policy is not given. It is claimed by the defendant that the possession of this policy with the envelope inclosing the stamps was granted only for the purpose of the examination of the policy, and its comparison with that of another company; that it was not delivered absolutely as a complete contract, but was simply for the purpose stated, and none other. That testimony is not challenged by anything in the case, except, if it may be called an exception, the claim made in argument that there are certain discrepancies in the testimony of the witness Ellis, the agent of the company who intrusted the policy to Amos. There is no testimony in contradiction to that of Ellis, and the alleged discrepancies are not supported by the record.

Now, as I have said, prima facie evidence may be controverted, and, if it be successfully controverted, the presumption which attaches to it, of course, is displaced. If any witness here testified to the delivery of that policy as and for a contract, an agreement between the parties for the insurance upon the life of Mr. Amos, I should say that undoubtedly the case must go to the jury. It would be for them to determine between one witness and any number of witnesses to the contrary, because there would then be presented a clear issue of fact. While the law attaches to the possession some force, the question of the purpose, character, and quality of that possession is to be determined, and, while it is prima facie evidence of delivery, that is only a rebuttable presumption. It is not evidence when rebutted by uncontradicted credible testimony disproving the intent and authority to contract, and by facts and circumstances which clearly negative the execution of the alleged contract. There is no evidence that the party to whom it was delivered, Walter G. Amos, ever asserted any right under it. He never disclosed, so far as the testimony goes, to any person, the possession of this policy, nor made any claim that he had insurance in the defendant company. The right of the plaintiff to recover, so far as the question of delivery is concerned, rested solely upon the possession of the instrument. Nor is this all. The instrument, as I have said, being incomplete and imperfect at that time, the evidence shows that no act was subsequently done by the defendant company to give it status as a contract, or to make it evidence in the cause. Whatever compliance with the internal revenue act, to make the policy admissible in evidence, has been made, was not the act of, or known to, the defendant. If the instrument is now so far a completed instrument as to be admissible in evidence, it was made so, not by the defendant, but by the act of the person having it in possession after the death of Walter G. Amos, who had never acted upon it in his life. It was not a completed legal instrument while in his possession. It derived the color of validity under the war revenue act after his

death, from two acts: First, the plaintiff's application for leave to affix the stamps and cancel them made by the internal revenue collector at Detroit, under the provisions of law, and that officer's cancellation of the stamps. The collector of the "proper district" could affix and cancel the stamps, if the policy by delivery had become a contract, and the omission to affix the stamps arose from any of the causes which authorized the collector of internal revenue to affix and cancel the stamps, but not otherwise. The collector's act could not make a contract for the parties, but only made the instrument receivable in evidence, if otherwise competent.

Taking into consideration the undisputed facts that the policy was not stamped, and that the stamps were in a separate envelope, uncanceled, and the fact also that it was the legal duty of the defendant to affix and cancel them, if it were issued and delivered absolutely as a contract of insurance, and the presumption which must be indulged in towards the defendant company that it did not intend to violate the law, or incur its penalties by nonperformance of the duties it enjoined—for that presumption defendant is entitled to—and in view of the uncontradicted testimony of Ellis and Cole to the fact that the policy was left with Amos only for examination, and not otherwise, the slight discrepancies, which are alleged against the credibility of the testimony of the former, do not amount, as against these facts and circumstances, to that conflict of evidence upon the vital question of delivery of the policy which would sanction the submission of this case to the jury. Beyond that, the question arises whether there was any payment made. The policy provides that "this policy shall not take effect until the first premium shall have been actually paid while the insured is in good health." The purpose of that clause is obvious: That there should be no deferring of the payment—no right acquired under the policy, unless the stipulated first payment was made while the insured was what is regarded by the company an insurable risk. That requirement is made a condition precedent to the validity of the policy as an obligation on the part of the defendant. The character of defendant forbade it to insure without payment of the first premium. Now, upon that question alone the evidence is all one way. There is no evidence that defendant's agent was ever held out as authorized by the company to waive this payment. There were five witnesses who testified that that payment was not made. No witness testifies to the contrary. The only evidence appearing to the contrary is the recital of the payment of that premium in the printed part of the policy. The amount of the premium is stated in writing. Now, if there were no delivery of this policy, this recital is, of course, of no force or effect. The nondelivery of the policy as the contract of the parties disproves the acknowledgment of payment. In addition to the testimony of the witnesses Cole, Ellis, Skinner, Davison, and Fraher, there is considerable testimony that Mr. Amos had not the means to pay for this policy. It also appears in evidence that he had on the 30th of January a policy in another company upon which recovery was subsequently had. That policy, properly stamped, was found in his desk, in the same drawer with these two instruments. The stamps upon it were canceled. That, in connection with the fact that these stamps were uncanceled and unaffixed to the instrument sued

upon, lends support to the conclusion reached upon the question of delivery, tending to show that this policy was neither delivered to nor accepted by deceased as a contract. See Hartford Fire Insurance Company v. Wilson, 187 U. S. 467, 23 Sup. Ct. 189, 47 L. Ed. 261.

For these reasons, a verdict is directed for defendant.