(No. 12147.—Judgment affirmed.)

A. J. C. COTTINGHAM *et al.* Defendants in Error, *vs.* THE NATIONAL MUTUAL CHURCH INSURANCE COMPANY, Plaintiff in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 3, 1919.*

1. INSURANCE—*how question as to sufficiency of evidence may be raised.* In a trial by the court without a jury for the recovery of insurance on a preliminary contract, the question whether or not the evidence offered by the plaintiff is sufficient to entitle him to judgment may be raised by demurrer to the plaintiff's evidence, by motion to find the issues for the defendant or by proper propositions of law submitted to the court for its holding.

2. SAME—*when contract for insurance will be construed favorably to the insured.* An insurance contract is to be interpreted by the same rules as other contracts, but where the insurance company leaves its design or meaning doubtful by the use of language that is not clear, courts will adopt a construction favorable to the insured.

3. SAME—*when contract for insurance by mail becomes complete.* Where one of the parties to a preliminary contract of insurance proposes to be insured by correspondence and the other party agrees to insure, or, conversely, when the insurer makes a definite proposition which is unconditionally accepted, the contract of insurance is complete and binding when the acceptance is deposited in the mail, properly addressed and stamped.

4. SAME—*when a suit may be maintained on a preliminary contract of insurance.* It is not necessary in a preliminary contract for insurance that all the details of the contract as finally expressed in the written policy shall be specified but it will be presumed that the usual form of policy is contemplated, and if the subject, the period, the amount and the rate of insurance are understood and the premium paid if demanded, a suit may be maintained on the preliminary contract.

5. SAME—*when rate is sufficiently definite in preliminary contract.* Where, in a preliminary contract for insurance, the rate is stated to be a reasonable rate, to be finally determined when the necessary facts are ascertained, or when the rate is stated to be what certain other companies charge for similar insurance or for a certain amount less than such companies charge, the rate is sufficiently definite to make a binding contract.

6. SAME—*when insured is not entitled to interest.* In a suit for the recovery of insurance on a preliminary contract which does

not fix definitely when the insurance is to be paid, and where the evidence does not disclose when the insurance is to be paid under the policies of the insurer, the insured is not entitled to the recovery of interest.

7. CONTRACTS—*when a contract by mail is complete.* A contract entered into by means of letters written and mailed by the parties becomes complete when an unqualified assent to the latest offer of one of the parties is deposited in the mail, properly directed and stamped by the other party, unless the offer is so qualified as to require the actual receipt of the letter of acceptance before the agreement is complete.

8. SAME—*when the existence of a contract is a question of law.* Whether or not certain correspondence between the parties constitutes a contract is a question of law for the court.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. DAVID F. MATCHETT, Judge, presiding.

N. M. JONES, (SAMUEL A. HARPER, of counsel,) for plaintiff in error.

W. T. ALDEN, C. R. LATHAM, and H. P. YOUNG, (CHARLES MARTIN, of counsel,) for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendants in error recovered judgment in the circuit court of Cook county in the sum of $14,500 against plaintiff in error, the National Mutual Church Insurance Company, on a contract of insurance covering their church building located in Dillon, South Carolina. On appeal the Appellate Court for the First District reversed the judgment and entered a judgment for $12,083.33 in favor of defendants in error. A writ of *certiorari* was allowed by this court, and errors and cross-errors have been assigned by the parties.

The facts in the case are not in dispute. Plaintiff in error is a corporation organized under the insurance laws of the State of Illinois, with its principal office in Chicago.

Its business is that of soliciting, writing and issuing fire insurance risks upon church and parsonage buildings throughout the United States. It was stipulated that the defendants in error, the trustees of Dillon Methodist Episcopal Church, South, are vested with the full legal title to the property in question; that the method of soliciting and obtaining insurance is by letters, circulars or otherwise, addressed and mailed to ministers or officials having charge of churches, by the plaintiff in error, and that it does not employ other agents or solicitors outside of Illinois; that in the years 1914 and 1915 Henry P. McGill was its secretary and manager and its duly authorized agent in the transactions in question, with headquarters in Chicago, and that during said times the Rev. A. J. Cauthen was pastor of the Dillon Methodist Episcopal Church, South, at Dillon, South Carolina, and the duly authorized agent of defendants in error in the transaction relating to said insurance. On December 18, 1914, McGill sent by mail from Chicago a circular letter addressed to Rev. Cauthen at Dillon and enclosed therewith a blank application for insurance. In this letter the secretary and manager informed Rev. Cauthen of the prompt payment by plaintiff in error of a recent loss of $3000 sustained by the trustees of a church at Lanford Station, South Carolina, and that his company had paid out altogether over $800,000 to conserve the interests of Methodism and that the volume of its business had grown to over $34,000,000, and concluded as follows: "Your church or parsonage might be the next to go. Is this property, which represents the sacrifice, toil and consecration of so many faithful people, insured against fire, lightning and windstorms up to three-fourths of its value? Otherwise, in view of the trifling costs of protection under our system, we advise prompt use of the mails or wires, for in all my experience of over twenty-five years in the business I have never known a fire or tornado to come at a time that was convenient—to honest folks. Upon arrival of request

by wire we will bind insurance pending receipt of regular application and agreement as to terms." On December 28, 1914, Rev. Cauthen filled out the application blank enclosed and returned it to the plaintiff in error with the following letter: "I enclose herewith application for rates of insurance on our church for an amount not exceeding $25,000. Would like to know rate on parsonage described as follows: Two-story, frame, nine rooms, heated with grates, cost about $5000. It is not nearer a building than the church, fifty feet away. The next nearest house is across the street, sixty feet. It has water connections and is lighted with electricity. We now have it insured, but we wish to transfer the whole or a part of all our property into a cheaper company, provided it is safe. Please give me the information needed as to your company." The pastor wrote on the margin of the application, "This is not application but inquiry for rates on $25,000." At the bottom of the application there was this clause: "That no liability of the company shall attach until this application has been actually approved at our home office, and that the total insurance, including that carried in any other company, whether valid or not, is not to exceed three-fourths of the actual cash value of the property." The secretary and manager of plaintiff in error on December 30, 1914, wrote the pastor as follows: "Your favor of the 28th inst. is received. We are in position to take care of $14,500 on your church. Our policy, of course, would permit other insurance, so that the additional amount may be taken care of in other companies. We try to be conservative and never accept excessive amounts subject to any one fire. The church and parsonage being only thirty feet apart, we must confine our line on both buildings to $14,500. When filling out the application for rate on church we regret that you did not reply to question No. 17, asking for the rate charged by old line companies. The enclosed red circular will explain more fully why it is to the interest of our applicants to

give us this information. In the absence of a reply to this question, we state that our premium for the first year will be ten per cent less than one-third of the amount re‑ liable old line stock companies would charge you, all in advance, for a three-year policy, plus a policy fee of $1.50. The policy fee is to be paid only at the beginning of the five-year term. Our policies, as you doubtless know, are issued for a term of five years, but instead of collecting in advance for the entire term, as is done by stock companies, we collect in annual installments." In this letter was en‑ closed a circular printed in red letters, headed "Important," urging applicants to answer the questions in the application for insurance regarding stock companies rates, "if they can do so without special inconvenience." On January 5, 1915, the pastor of the church replied in the following words: "In reply to yours of recent date will say that our board has instructed me to request you to issue a policy on our church and parsonage for the amount of $14,500, as per your offer. The present insurance is at the rate of $6.50 per thousand, which, according to your statement, will make your rates $1.95 per thousand. We value the entire prop‑ erty at about $48,000,—the church at $40,000 and the par‑ sonage at $8000. I suppose these figures will determine the relative amount of insurance on each should either be de‑ stroyed." On January 7 defendants in error notified plain‑ tiff in error by letter that the church had been destroyed by fire and asked plaintiff in error to send a representative to investigate the matter or send blank proofs of loss. The church was destroyed by fire while the former letter was in transit from Dillon to Chicago but the parsonage was not damaged. On January 8, 1915, the secretary and man‑ ager replied to the pastor's letter of January 5 as follows: "Your favor of the 5th instant ordering policy for $14,500 on your church and parsonage is received. Before pro‑ ceeding, permit us to trouble you for a little additional information. As the church and parsonage are separate

buildings it will be necessary for us to place a specific amount of insurance on each. Kindly inform us how much of the $14,500 you wish to have cover your parsonage. We note what you say regarding the stock company rates being $6.50 per thousand. Do we understand correctly that this is their rate for one year on the church, and that for three years they would charge you twice this amount, or $13? Is the rate the same on the parsonage? The enclosed red circular will explain more fully why we do not lose sight altogether of the rates charged by stock companies. A rate of sixty-five cents per hundred for three years on a church is lower than reliable stock companies usually charge. In order that you may be promptly protected, we bind as of twelve o'clock noon to-day, $12,000 on your church and $2500 on your parsonage, subject to proper rate, and will hold our binder in effect for ten days, thus allowing ample time for your reply to reach us." At the time the last letter was written and mailed by plaintiff in error it had no knowledge that the church had been destroyed by fire. It was further stipulated on the trial that the church building was of the value of $40,000 on January 5, 1915, and that the value of the parsonage was $5000, and that the loss suffered by defendants in error by the fire exceeded $15,000 over and above all other insurance on the church and parsonage property.

The trial was before the court without a jury. Propositions of law were submitted to the court by plaintiff in error which raised the legal question whether or not the stipulated and proved facts established a binding preliminary contract of insurance between the parties to this suit. The court overruled all propositions submitted by plaintiff in error that would lead to the conclusion that there was no such binding contract. The question whether or not the evidence offered in the case by the plaintiff is sufficient to entitle him to judgment may be raised by demurrer to plaintiff's evidence, by motion to find the issues for the de-

fendant or by proper propositions of law submitted to the court for its holding. *Helm* v. *Commercial Men's Ass'n,* 279 Ill. 570.

An insurance contract is to be interpreted and construed by the same rules as other mercantile contracts, and the principles governing such interpretation and construction do not differ from those controlling in other contracts, but where the insurance company leaves its design or meaning doubtful by the use of language that is not clear, courts adopt a construction most favorable to the insured. (*Aurora Fire Ins. Co.* v. *Eddy,* 49 Ill. 106.) A contract entered into by means of letters written and mailed by the parties becomes complete when the latest proposition on the part of one of them is assented to by the other party. So a contract is complete when an unqualified assent to the offer of one of the parties is dropped in the post-office properly directed and stamped by the other party, unless the offer is so qualified as to require the actual receipt of the letter of acceptance before the agreement is complete. (1 Elliott on Contracts, sec. 44.) Whether or not the correspondence constitutes a contract is a question of law for the court. *Telluride Power Co.* v. *Crane Co.* 208 Ill. 218.

The suit in this case is not on a policy but on a contract of insurance, generally referred to by courts and authors as a preliminary contract of insurance. The object of the parties in making such a contract and of the courts in upholding the same is, that the parties may have the benefit of it during that incipient period when the papers are being perfected and transmitted. It is sufficient if one of the parties to such a contract proposes to be insured and the other party agrees to insure, and the subject, the period, the amount and the rate of insurance are ascertained or understood and the premium paid if demanded. (*Eames* v. *Home Ins. Co.* 94 U. S. 621.) The converse of this proposition is also true, that when the insurer makes a definite proposition, as aforesaid, to the insured to insure prop-

erty, a preliminary contract of insurance is complete and binding when the insured unconditionally accepts the proposition by letter duly mailed and stamped and properly addressed to the insured. It is not necessary in such a preliminary contract that all the details of the contract as finally expressed in the written policy should be specified. In a preliminary contract it will be presumed that the parties contemplate such form of policy containing such conditions and limitations as are usual in such cases or have been used before between the parties. (*Eames* v. *Home Ins. Co. supra.*) The preliminary contract is sometimes partly in writing and partly in parol. This court has frequently recognized that a suit may be maintained on such a contract by either one of the parties. *Firemen's Ins. Co.* v. *Kuessner,* 164 Ill. 275.

Plaintiff in error's letter of December 30, 1914, to Rev. Cauthen is a definite proposition on its part to insure the church and parsonage of defendants in error for $14,500 on both buildings. The amount of the insurance is definitely stated, and it is apparently left to the assured to designate how much insurance is to be on the church and how much of the amount is to be on the parsonage. The subject of the insurance was clearly made known by the previous correspondence, and all questions in the application had been answered by the assured satisfactorily to the plaintiff in error except one, which its letter clearly discloses was not essential except to determine the rate of insurance. In its proposition to insure it stated sufficiently definite what the first year's premium would be: "Ten per cent less than one-third of the amount reliable old line stock companies would charge you, all in advance, for a three-year policy, plus a policy fee of $1.50." The term of the insurance is clearly made or stated to be five years. The answer of Rev. Cauthen of January 5, 1915, to the plaintiff in error's proposition to insure is, in substance, that defendants in error accept the terms offered and request the issue of a

policy on the church and parsonage for the amount speci-
fied, "as per your offer." In his letter he further states the
relative values of the church and parsonage, with a state-
ment that he supposed that those figures will determine the
relative amount of insurance on each "should either be de-
stroyed." In other words, he gave to plaintiff in error the
relative amounts of insurance that should be placed upon
the church and upon the parsonage, which was at a ratio
of $40,000 to $8000, or 5 to 1.

It is argued by plaintiff in error that the foregoing pre-
liminary contract was not definite as to the amount of the
insurance that should be placed on the church or as to what
the rate or the term of insurance should be. These are
the only objections raised as to the preliminary contract be-
ing completed. We have just seen, by analysis of the let-
ters of the two propositions as aforesaid, that the company
stated definitely that the insurance was to be for a term
of five years, and it also stated definitely what the rate
of insurance was to be,—that is, stated it in terms that
could be made definite when the rate charged by old line
companies was ascertained. Where in such a preliminary
contract the rate is stated to be a reasonable rate, to be
finally determined when the necessary facts are ascertained,
or when the rate is stated to be what certain other com-
panies charge for similar insurance or for a certain amount
less than such companies charge, the rate is sufficiently defi-
nite to make a binding contract. (*Scammell* v. *China Mutual
Ins. Co.* 164 Mass. 341.) Rev. Cauthen's answer also made
it sufficiently definite as to how the insurance was to be
placed on the church and on the parsonage. It was a mat-
ter of utter indifference to the plaintiff in error as to the
amounts to be placed on the church and parsonage,—*i. e.,*
as to how the $14,500 insurance was to be distributed,—
and its letters clearly so indicate, and that Rev. Cauthen
was to inform it as to how he wanted the insurance placed,
and he did so inform it. Plaintiff in error cannot be heard

to say that the contract was not definite as to the amount of insurance to be placed on each building because of the fact that it wrote a reply to Rev. Cauthen asking as to how the insurance should be distributed. It already had that information and we must interpret the letters according to their plain meaning. Plaintiff in error clearly showed by its subsequent correspondence that it regarded Rev. Cauthen's letter as authority to it to issue a policy according to the terms proposed by it to him. In giving its excuse for not recognizing liability in its letter of January 9, 1915, referring to Rev. Cauthen's letter requesting the issuing of a policy, it said, "Authority to issue the policy did not reach us until after the fire." It did not have to reach the company before the fire but it was "authority" for issuing the policy the moment that the letter was mailed, and from that moment it closed the binding preliminary contract.

It follows from what we have already said that the Appellate Court's judgment was for the proper amount, five-sixths of the $14,500 for which both buildings were insured. Defendants in error were not entitled to interest. The preliminary contract did not fix definitely when the insurance was to be paid. The evidence did not disclose when the policies of plaintiff in error provided that insurance should be paid. This was not such a contract, therefore, as would permit the recovery of interest. The most that defendants in error could claim is that they were entitled to recover interest after a reasonable time had elapsed for paying the insurance, or that they would be entitled to receive interest after the insurance was due according to the usual provisions of plaintiff in error's policies. In other words, if the contract in this regard was in writing or could be said to be in writing, what the written contract was in that particular is not disclosed by the evidence.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*