## FISHER v. UNDERWRITERS AT LLOYD'S LONDON.

### No. 7273.

Circuit Court of Appeals, Seventh Circuit.

Nov. 18, 1940.

Rehearing Denied Dec. 10, 1940.

David J. Kadyk and George B. Chapman, 3d, both of Chicago, Ill., for appellant.

Norman A. Crawford, of Chicago, Ill., for appellee.

Before EVANS and KERNER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Plaintiff, suing upon an alleged insurance contract, recovered judgment in the District Court for the sum of $3,481.60, after trial before the court without a jury. Defendant appeals, alleging numerous errors of law, but there are two main questions for review. The first involves a determination of what was the controlling contract between the parties; and the second, if the written contract is controlling, an interpretation of the same.

Plaintiff's original statement of claim asserted that defendant agreed orally to pay the plaintiff the sum of $200 per day from January 24 to March 4, 1938, during which time plaintiff might be prevented by reason of bodily injury or illness arising after December 30, 1937, from filling her engagements as a classical dancer while on tour in the United States; and that plaintiff was prevented from filling such engagements by bodily injury for sixteen days during such period. Defendant answered, denying any oral agreement, but alleged that by virtue of a written agreement, designated a "cover note," No. 3019, defendant insured plaintiff against injury caused by accidental means, etc., for the period indicated, against total disablement, which continuously disabled the insured from fulfilling her engagements as a classical dancer while on tour principally through the Southern States of the United States of America. Defendant's answer further alleged that plaintiff's disablement did not prevent her from fulfilling such engagements as a classical dancer. Attached to this answer as an exhibit was a copy of the alleged cover note.

After the filing of this answer, defendant, pursuant to Rule 33 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, filed certain interrogatories some of which were designed to elicit from plaintiff information concerning her engagements and contracts of employment during the period in question. Plaintiff declined to answer such interrogatories and the District Court with plaintiff's consent entered an order under Rule 37 of the Rules of Civil Procedure, barring the plaintiff from offering any evidence at the trial of any contracts to fulfill engagements as a classical dancer, principally through the Southern States of the United States, during the designated period, and further providing that plaintiff be not allowed to support any claims based upon the existence of any such contracts or to support any defenses based upon their non-existence. After the entry of the last order, defendant filed its motion for judgment which presented at once the question of the interpretation of the written cover note, No. 3019, and more particularly the question whether she could recover without proof that she had any such engagements for the period in question.

While this motion was under advisement by the District Court, the plaintiff filed an amended complaint, alleging the oral promise as indicated in her first complaint, and asserting that defendant promised to pay for disability "defined as such disability as would prevent defendant from fulfilling her engagements as a classical dancer, while on tour in the United States regardless of whether plaintiff actually had any such engagements or not by reason of bodily injury or illness arising thereafter." Defendant answered the amended complaint denying the oral promises relied upon, again asserting the provisions of cover note, 3019, and alleging that plaintiff's disability did not disable her and prevent her from fulfilling her engagements as a classical dancer while on tour principally through the Southern States of the United States of America. In its answer, defendant also set up the provisions of cover note 3018, a separate instrument issued at the same time which covered disability for illness for the period in question. We shall not have occasion to consider cover note 3018 for it is conceded that such disability as plaintiff suffered was due to an accidental injury and not to illness. Upon these issues a trial was had before the court, and the court filed its findings of fact and conclusions of law and rendered judgment for the plaintiff.

Among other things, the court found that plaintiff, through her agent, entered into a parol agreement to effect insurance with defendant, covering the period and in the amount indicated and that such parol

agreement contained no provision that insured should be required to have contracts of employment or prove her disability to perform such contracts and contained no provision that benefits were not to be payable the first two days of disability. The court also found that there was no actual or material variance between such parol agreement and the provisions of said cover notes, except that cover note 3019 contained a provision that in no event should benefits be paid thereunder for the first two days of disability, and that the language of said cover note was intended by the parties to permit a recovery "without reference to any contracts of employment or for engagements, or disability to perform under any such contracts." The court in its conclusions of law recited that the parol agreement was valid and binding on the parties and that said parol agreement to effect insurance and said parol agreement of insurance were merged in the two written cover notes, insofar as such cover notes were not actually or materially at variance therewith; that by the true meaning of said notes, plaintiff was not required to have or produce in evidence contracts of employment during the period in question.

### The Contract Between the Parties.

The plaintiff was represented in all matters concerning the contract in question by her husband and agent, who had acted for her in a similar capacity for many years past and was the only witness appearing in her behalf at the trial. On December 30, 1937, he communicated with the agents of defendant, advising them that plaintiff, a professional dancer, was contemplating a tour of the Southern States of the United States, commencing January 24, 1938, and continuing through March 4, 1938, and that plaintiff desired insurance in the amount of $200 per day against all disability to her professional capacity as a performer during that period. Later, the agent of the defendant telephoned the agent of the plaintiff that such insurance had been arranged and the cover note 3019 (being the written contract relied upon by defendant) was delivered to plaintiff's agent on January 5, 1938. During these telephonic conversations no reference was made to the terms of the insurance, other than the period it was to be effective, the premium, the amount of indemnity to be paid, and the nature of the disability (accidental and illness). Cover note 3019 is the written memorandum issued by defendant, covering the accident hazard and cover note 3018, which is of relative unimportance in this proceeding, covered disability arising from illness. The plaintiff suffered an accident on January 9, 1938, falling through a skylight, sustaining injuries, the extent of which is not disclosed. On January 11, 1938, plaintiff's agent paid the premium to defendant for both of said cover notes.

Plaintiff contends that there is a variance between the parol arrangements and some of the provisions in the cover notes. Cover note 3019 provided that no benefits were to be paid for the first two days of the disablement. Plaintiff asserts that this was not mentioned in the telephonic conversations. This cover note in Paragraph 7 of the "Schedule of Compensation" also provided, as follows: "7. Total disablement which either permanently or temporarily, necessarily and continuously disables the Assured and prevents the Assured from fulfilling her engagements as a classical dancer while on tour principally through the Southern States of the United States of America. $200.00 per day so long as the disablement continues, during the period between January 24, 1938, and March 4, 1938, both days inclusive." Plaintiff likewise asserts that this provision was not discussed and that nothing was said about any contracts of employment during that period.

The plaintiff had previously, in August, 1935, through her husband as agent, obtained from defendant a written binder of accident insurance, covering a period of 35 days which provided that the defendant would pay the plaintiff $1,500 a week "for total disablement which either permanently or temporarily, necessarily and continuously disables the assured and prevents assured from filling the contract with H. H. Handley." This binder provided that no benefits were payable for the first two days of disablement.

Again in November, 1935, she obtained a similar written binder of accident insurance from defendant, covering a period of thirteen days, which provided that defendant would pay the plaintiff $1,000 a week "for total disablement which either permanently or temporarily, necessarily and continuously, disables the assured and prevents the assured from filling her contract." This binder also contained the two day elimination clause.

Again in February, 1936, the plaintiff obtained from defendant a similar written binder which provided that defendant would pay plaintiff $2,500 a day for "total disablement which either permanently or temporarily necessarily and continuously disables the Assured and prevents the Assured from filling her contract, on March 1st and March 2nd, 1936 * * *." This binder covered only a two day period and, presumably for this reason, contained no two day elimination clause. Also in 1936, defendant issued to plaintiff a written binder covering illness. No two day elimination clause appeared in this contract, or any other similar contract covering illness.

Again in November, 1936, plaintiff obtained from defendant a written binder of accident insurance which provided that defendant would pay plaintiff $1,000 per week for "total disablement which either permanently or temporarily necessarily and continuously disables the Assured and prevents the Assured from filling her contract with the Chicago City Opera Company." This binder contained the usual two day elimination clause. There was also issued in November, 1936, a written binder covering illness.

Plaintiff declares on the oral contract, and contends that the two day elimination clause and the provision of Paragraph 7 of the "Schedule of Compensation" should not have been included in the binder or cover note. She asserts that they were wrongfully inserted in the cover note, wrongfully, not because of any agreement to the contrary, but wrongfully because of no mention of same in the preliminary conversations. In the case of Eames v. Home Insurance Company, 94 U.S. 621, 629, 24 L.Ed. 298, the following language is used by the Supreme Court: "As to the plea that the contract does not specify what kind of a policy was desired, it does not appear that the complainants had any knowledge or notice that the defendant issued different kinds of policies. As Eames justly said, he supposed (as he had a right to suppose) that they would get the same kind of policy which had been issued on the property before. If no preliminary contract would be valid unless it specified minutely the terms to be contained in the policy to be issued, no such contract could ever be made or would ever be of any use. The very reason for sustaining such contracts is, that the parties may have the benefit of them during that incipient period when the papers are being perfected and transmitted. It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or understood, and the premium paid if demanded. It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used before between the parties. This is the sense and reason of the thing * * *." See also Cottingham v. National Mut. Church Insurance Company, 290 Ill. 26, 124 N.E. 822.

These cases were cited and followed in Trichelle v. Sherman & Ellis, Inc., 259 Ill. App. 346. In this case, plaintiff sued on a preliminary binder of fire insurance. The defendant maintained that the preliminary binder was subject to all the terms and conditions of the usual form of policy and that the plaintiff did not comply with certain of those terms and conditions. One condition required the plaintiff to bring suit on the policy within twelve months after the loss. A second condition provided that the policy would be void if the assured had other insurance on the property. A third condition provided that the policy would be void if explosives were kept on the premises. None of these three conditions was mentioned in the preliminary binder. The defendant proved that the present action was instituted more than a year after the loss, that the plaintiff had other insurance on the property, and that explosives were kept on the premises. The jury returned a verdict for the plaintiff and judgment was entered thereon. The Appellate Court reversed the judgment because the trial court erred in not directing a verdict in defendant's favor.

We think that the parties, in view of their previous conduct and their previous contracts, covering similar risks, had a right to suppose and did assume that substantially the same kind of a contract would be issued by defendant in pursuance of the order given by the plaintiff on December 30, 1937, as had been previously used for like insurance. It is undisputed that the period of insurance, the premium to be paid, the amount of indemnity and the disability to be insured against were agreed upon in the preliminary conversations, and, this being true, if the defendant, pursuant thereto issued its written cover note, substantially in accordance with previous similar contracts between the parties, neither party can complain.

Many provisions were contained in the written cover note not mentioned in the preliminary conversations in addition to the two day elimination clause and the provisions of Paragraph 7. Necessarily this must be so if the law is to give recognition to such preliminary binders. Risks excluded from one type of policy may frequently be covered in a policy of a different type. A personal accident policy does not cover intentional self-injury; an ordinary life insurance contract does not, during the contestable period, cover suicide; an automobile public liability policy does not cover one driving the assured's car without his consent. When the assured orders a policy from his broker, he does not usually discuss these details, but preliminary binders are issued daily upon the mere naked order for an insurance contract. When the contract is issued if it contains the usual conditions, limitations and exclusions that have by practice been generally recognized in similar contracts or that have previously existed in similar contracts between the parties they will be given effect by the courts.

If it was reasonably consistent with the practice in similar cases or reasonably consistent with substantially similar insurance contracts between plaintiff and defendant to include in the written cover note the two day elimination clause and the provisions of Paragraph 7 referred to, then the oral conversations preliminary to the issuance of such cover note were merged in the cover note which became the contract of the parties. In Hartford Fire Ins. Co. v. Webster, 69 Ill. 392, the Supreme Court of Illinois said: "No principle of law is better settled than that the evidence of a contract can not exist partly in writing and partly in parol. Whatever may have been said in reference to the contract between the parties, at the time of or prior to its execution, after it was reduced to writing parol evidence was inadmissible to enlarge, modify, or contradict its terms as expressed in the written instrument. The parties might, undoubtedly, by a subsequent agreement, modify or enlarge its terms by parol, but that was not the case here. What was relied on as an excuse for not complying with its terms, was said when the contract was being made, and is directly contradictory to it, as evidenced by the policy." See also Hartford Fire Insurance Company v. Wilson, 187 U. S. 467, 23 S.Ct. 189, 47 L.Ed. 261; Har-

nickell v. New York Life Insurance Company, 111 N.Y. 390, 18 N.E. 632, 2 L.R.A. 150; Union Mut. Life Insurance Co. v. Mowry, 96 U.S. 544, 24 L.Ed. 674; 16 Am. and Eng. Encyclopedia of Law, Second Edition, page 856. The principle that written contracts cannot be varied by parol and that contracts generally cannot be founded partly in parol and partly in writing is fundamental. Winnesheik Insurance Co. v. Holzgrafe, 53 Ill. 516, 5 Am.Rep. 64; Hartford Fire Insurance Co. v. Webster, supra; Rozgis v. Missouri State Life Insurance Company, 271 Ill.App. 155. It is not necessary in a preliminary contract that all the details of the contract finally to be expressed in the written policy should be specified, but in a preliminary contract it will be presumed that the parties contemplated such form of policy, containing such limitations and provisions as are usual in such cases, or as have been used before between such parties. Eames v. Home Insurance Company, supra; Cottingham v. National Mutual Church Insurance Company, supra.

We find from the testimony of plaintiff's agent that nothing was said during the conversations concerning the two day elimination period, and nothing was said in regard to whether or not plaintiff had any contracts of employment during the period in question. Plaintiff's agent testifies, "I told him (agent for defendant) that I would accept the insurance on the basis that had been covered in our conversations and that was to carry it forward in whatever manner was proper and bill me for it in due course." Defendant's agent testifies that plaintiff ordered insurance of the kind she had previously carried, the plaintiff has not denied this, unless it be by inferences to be drawn from the testimony of her husband. Under such circumstances, we think there was no substantial disagreement between the parties about the preliminary conversations and we conclude that the written cover note, issued in pursuance thereof, being to all effects and purposes substantially similar to previous contracts of insurance between the parties became, when issued, the contract of the parties. The oral discussions became merged in such written contract. It was manifestly impossible that all the details of the insurance contract should be included in the conversations and such written contracts are not to be condemned merely because they contain provisions not mentioned.

The District Court in its conclusions of law found that such parol agreements were merged in the written cover notes "so far as such cover notes were not ·actually or materially at variance therewith;" but he further concluded that the two day elimination clause was not properly included in the written contract and was not binding upon either party. This conclusion of law we cannot accept on the undisputed facts.

Interpretation of Cover Note 3019.

 Having concluded that the written contract must prevail, the question arises as to the interpretation of Paragraph 7 of the "Schedule of Compensation," included in such contract. Defendant contends that plaintiff, regardless of the nature and extent of her disability cannot recover, unless her disablement was such as prevented her from fulfilling her engagements as a classical dancer while on tour. Plaintiff contends that she is entitled to recover regardless of whether she had any engagements or not.

The plaintiff declined to answer interrogatories on this subject matter, and was properly precluded by the court on account of such failure from offering any such proof at the trial. A question of law was thus presented as to whether this was a necessary part of plaintiff's case. The language in question is plain and unambiguous—"Total disablement which either permanently or temporarily * * * disables the assured *and prevents the assured from fulfilling her engagements as a classical dancer while on tour principally through the Southern States of the United States of America.*" The District Court adopted the construction contended for by plaintiff. We do not agree with this interpretation of the ·contract. We think the quoted language is a material and substantial provision of defendant's binder and a limitation upon the insurance contract that must be given effect. It is clearly apparent that the hazard insured against was plaintiff's inability to fulfill her engagements while on tour in the Southern States during the period from January 24 to March 4, 1938. Obviously, plaintiff could not prove that she suffered disablement which prevented her from filling engagements, if she had no engagements. The language in question must be construed to mean that payments would be made if plaintiff's disablement prevented her from fulfilling engagements which she actually had; if she had no engagements on the days she claims disability, then she suffered no disability within the meaning of the cover note. For the purpose of this case, the court could only assume that she had no· engagements, because she declined to answer the interrogatories on this subject.

Plaintiff asserts that an accident policy, requiring payment for total disability, is not one of indemnity against loss of income, but against loss· of capacity to work and cites many cases that have so held. In those cases, however, the courts were dealing with a different kind of contract and it was unimportant whether assured had employment during the period of disability or not, and in fact unimportant whether she had been paid compensation or not. But that is not the contract here and is not the risk insured against. The contract here provides for payment for total disablement that prevents assured from fulfilling her engagements as a classical dancer while on tour through the Southern States. At the time the insurance was applied for, defendant was advised that plaintiff did have such engagements for the limited period from January 24 to March 4, 1938, and ·undoubtedly it was the risk that she might by accident be unable to fill such engagements that was insured against. We think it obvious that if she had no such engagements this contract would not be effective. It is concededly a special kind of insurance and not the "stock" insurance contract; but substantially the same kind of insurance that plaintiff had on several previous occasions obtained from defendant. That the construction we adopt was the construction intended by the parties is very strongly evidenced by the fact that while the contract was effective from December 30, 1937, to cover accidental injury occurring after that date, disability payments were to cover only the limited period of January 24 to March 4, 1938. This is the only period for which plaintiff makes claim, and is the period covering her purported engagements in the South concerning which she informed defendant when making application for the insurance.

The District Court in its conclusions of law further found that: "By the true meaning of said cover notes plaintiff was not required either to have ·or produce in evidence contracts of employment or for engagements * * *." We think this was a mistaken interpretation of the written cover note. On the undisputed competent

evidence defendant was entitled to judgment. The judgment is reversed and the cause remanded.

Reversed and remanded.