JOSÉ ANGEL PEÑA ET AL., ETC., Plaintiffs and Appellees, *v.* HEIRS OF JOSÉ H. BLONDET, Defendants and Appellants.

No. 10141. Argued November 6, 1950.—Decided January 16, 1951.

*Romany & Romany* for appellants. *Guillermo Bauzá* for appellees.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

This is an action of filiation in which plaintiffs alleged uninterrupted possession of the status of natural children of defendants' predecessor as well as the concubinage which existed between the latter and the mother of the former. Subdivisions 2 and 3 of § 125 of the Civil Code, 1930 ed. The complaint was granted and defendants appealed.

The first assignment is based on the following facts: Before answering the amended complaint defendants submitted an interrogatory to be answered by the mother of the plaintiffs,[1] who appeared in the action on their behalf because they were minors. Having failed to answer said interrogatory within the term of fifteen days fixed by Rule 33 of Civil Procedure,[2] defendants moved for the dismissal of the complaint. The plaintiffs had moved for an extension to answer the interrogatory but having failed to state in their motion the good cause required by Rule 33 for obtaining the extension, the court by order of February 19, 1947 asked them to give the reasons for requesting it. On the same day plaintiffs filed

---

[1] Defendants did not give any special reason to justify it nor was any leave requested from the lower court to serve said interrogatory prior to the filing of an answer to the complaint as required by the ruling in *Rodríguez v. District Court*, 67 P.R.R. 677.

[2] Rule 33, insofar as pertinent, provides:

*"Interrogatories to Parties.*—Any party may serve upon any adverse party written interrogatories to be answered by the party served . . . The interrogatories shall be answered separately and fully in writing under oath. The answers shall be signed by the person making them; and the party upon whom the interrogatories have been served shall serve a copy of the answers on the party submitting the interrogatories within 15 days after the delivery of the interrogatories, unless the court, on motion and notice and for good cause shown, enlarges or shortens the time. . . ."

their answer to the interrogatory. The motion of the defendants to dismiss the complaint was argued and the lower court overruled the motion in view of Rule 37 (*d*).[3]

Appellants argue that since plaintiffs failed to state the good cause required by Rule 33, *supra*, to obtain leave to file their answer to the interrogatory after the fifteen days had elapsed, and since the court did not grant them permission to file said answer, it could not exercise the discretion provided by Rule 37 (*d*), *supra*, to refuse to dismiss the action.

In the recent case of *Pepin* v. *Ready-Mix Concrete*, 70 P.R.R. 723, we considered the scope of Rules 33 and 37 (*d*) in connection with the specific facts of said case which showed that the interrogatories had not been duly served on plaintiff and consequently, that the plaintiff had not wilfully failed to answer them and we decided that the court did not err in refusing to dismiss the complaint. In said case we cited *Valenstein* v. *Bayonne Bolt Corp.*, 10 Fed. Rules Serv. 696, to the effect that it is clear that a broad discretion is vested in the court within the bounds of Rule 37 to make whatever disposition is just "in the light of the facts of the particular case."

It is significant that the provisions of Rule 37, by its different subdivisions, contemplate the situation where a deponent refuses to answer any question when his deposition is taken or a party wilfully fails to appear before the officer who is to take his deposition or wilfully fails to serve answer to interrogatories submitted under Rule 33. Even in said cases and under a liberal construction of Rule 37 (*d*) in connection with Rule 33, it has been held that the

---

[3] Rule 37 (*d*) provides the following:

"*Failure of Party to Attend or Serve Answers.*—If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answer to interrogatories submitted under Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."

court has discretion to grant another opportunity to the party to answer the interrogatories. *Dann* v. *Compagnie Generale Trans-Atlantique Ltd.*, 29 F. Supp. 330; *Producers Releasing Corp. de Cuba* v. *PRC Pictures*, 176 F. 2d 93 (C.A. 2, 1949). It is usually in those cases in which it is proved that the party has acted in a dilatory or contumacious way when it has refused to answer the interrogatories or has answered them in an evasive way, that the courts have exercised their discretion imposing the penalties provided in Rule 37. *Fisher* v. *Underwriters at Lloyd's London*, 115 F. 2d 641 (C. A. 7, 1940); *Michigan Window Cleaning Co.* v. *Martino*, 173 F. 2d 466 (C.A. 6, 1949); *Producers Releasing Corp. de Cuba* v. *PRC Pictures, supra*, and cases cited on p. 95.

The case at bar is different. Plaintiffs herein did not decline to answer the interrogatory submitted by defendants. Their only error consisted in filing said answer, without permission of the court, after the fifteen-day term provided by Rule 33 expired. The plaintiffs could have declined to answer the interrogatory until the defendants had filed their answer to the amended complaint—*Rodríguez* v. *District Court, supra*,—but it does not appear from the record that they raised the question as defense. The lower court, in denying defendants' motion stated that the answer to the interrogatory was complete and thorough and that even though it was not filed within the statutory term, "given the nature of the proceeding and the fact that the rights of two minors are involved therein, the court understands that it is only fair to try the case on its merits . . ."

The lower court did not err in deciding the question raised since we consider that it made good use of the discretion granted to it by Rule 37 (d), *supra*.

■ In the second assignment appellants maintain that the lower court erred in permitting the testimony of several witnesses whose names were not included in the list furnished by plaintiffs when they answered the interrogatory. The

record shows that when said witnesses were called to testify, to which defendants objected because their names were not included in the said list, the court ordered that they merely give their names and addresses and did not permit them to testify until a few days later when the hearing of the case continued. On the other hand, upon answering the interrogatory, plaintiffs stated that besides the witnesses listed, they had "others who were so numerous that could not be enumerated." Defendants never requested the names of those additional witnesses. Under the aforesaid circumstances the error assigned was not committed.

When Lydia Angélica Peña, the mother of the plaintiffs, was cross-examined she was asked by the defendants whether or not it was true that she had written a letter to José H. Blondet, the defendants' predecessor, telling him that she had not received any money from him for a long time. As the witness had already answered other questions denying that she had written said letter and she was sure that she had not written it, plaintiffs objected the question and requested to have the letter shown. The court sustained the objection and ordered the defendants to show the letter to the witness. The attorney for the defendants admitted that the letter did not exist and that it had been his own invention. The appellants now allege that the court *a quo* erred in not permitting the question.

In the first place, it appears from the transcript of the evidence that the witness repeatedly answered that she had not written the letter mentioned by the attorney for the appellants. Consequently, upon insisting on the same question, if defendants intended to impeach the testimony of the witness, the court did not err in sustaining the objection since according to § 159 of the Law of Evidence (§ 521 of the Code of Civil Procedure) if the inconsistent statements made by the witness be in writing "they must be shown to the witness before any question is put to him concerning them."

14

■■ The fourth and fifth errors are frivolous and appellants seem to consider them so for they hardly argue them in their brief. They allege that the lower court did not permit them, in the cross-examination of witness Celia Guadalupe Martínez, to make her repeat her testimony and that it erred in giving credit to the testimony of Lydia Angélica Peña, plaintiffs' mother. The court has discretion to permit or refuse to permit that a witness be forced to repeat his testimony and the only contradiction to which appellants refer in the testimony of Lydia Angélica Peña is not sufficient by itself to deny giving it credit and the court so stated as we shall see on passing on the next assignment of error.

■ It alleges that the court a quo did not comply "with the provisions of Rule 52 (a) for it did not reach any findings of fact or conclusions of law on the two vital points on which plaintiff's cause of action could rest, that is, whether or not the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child or whether plaintiffs had uninterruptedly enjoyed the condition of natural children of José H. Blondet."

In its statement of the case and opinion, the lower court, after making an analysis of the testimony of the witnesses, stated the following:

"From the study, analysis and comparison of all the evidence in this case, we concluded that the facts involved were the following:

"About the end of 1939, Lydia Angélica Peña was a white and attractive young girl. She was courted by José H. Blondet, who told her that he was separated from his wife, although at that time he was married. At the beginning of 1940 Lydia gave in to Blondet's courtship and they started having sexual intercourse, first at the Palo Seco Resort, then at the Hotel Central in San Juan and then at Lydia's residence, subsequently in a house which Blondet furnished and rented in Vizcarrondo Street in Caguas and afterwards in house No. 15 of Lago Street in Gurabo. José H. Blondet visited Lydia almost

daily and their sexual relations were frequent until the death of Blondet in 1946. During all this time, that is, from the beginning of 1940 until the summer of 1946, Lydia Angélica Peña did not have any love affairs with any other man except José H. Blondet. As a result of the sexual relations between Lydia Angélica Peña and José H. Blondet, José Angel was born in the San Rafael Clinic in Caguas on July 7, 1943 and Nitza Enid on March 5, 1945 in Lago Street in Gurabo. From the time both minors were born until the death of Blondet, the latter continually performed acts of acknowledgement toward said minors as his natural children and treated them as such, privately and publicly, with words, gestures and actions; supporting them, feeding them, taking them out, being kind to them and taking care of them. We have no doubt that José H. Blondet is the father of the minors José Angel and Nitza Enid Peña and that they uninterruptedly enjoyed the status of natural children."

"The evidence of the plaintiffs was strong and convincing. On the other hand the evidence of the defendants tends to prove that Blondet slept almost every night at his home with his wife and legitimate children and that Blondet never mentioned the fact that he had any other children but his legitimate ones. This evidence of the defendants cannot destroy the chain of events which arises from the evidence of the plaintiffs.

"It is true that in a portion of her testimony Lydia Angélica contradicted herself since she admitted that she had to work at Camp O'Reilly because the amount of money Blondet gave her was not enough to cover her own expenses and those of her children. This inconsistence, if it is viewed in the light of the complete testimony of Lydia and the rest of the evidence of the plaintiffs is not an essential point. We believe that this attitude of Lydia Angélica is due to the fact that she tended to exaggerate the situation thinking that her two children should not be legally left without a father.

"The complaint in the filiation suit should be granted with costs on defendants and attorney's fees."

In discussing this error the appellants merely call our attention to the fact that the lower court did not make any findings of fact or state conclusions of law as to whether the plaintiffs had proved as they alleged in their complaint, that there existed a condition of concubinage between their

16

parents. This is true; nevertheless, the complaint was also based on plaintiffs' uninterrupted possession of the status of natural children of the defendants' predecessor and it was said ground which the court considered proved as a matter of fact and of law. It happened likewise in *Cruz* v. *Carrasquillo*, 61 P.R.R. 422 and *Bianchi* v. *Heirs of Bianchi*, 67 P.R.R. 557.

The cases cited by appellants to sustain that Rule 52(a)[4] was not complied with are clearly inapplicable to the case at bar. They refer to situations where the trial court failed to make findings of fact or state conclusions of law which were essential to determine whether the judgment was correct.

Even though in this case the lower court did not separately state its conclusions of law as to the possession of the status, they are included in its findings of fact when it said:

". . . From the time both minors were born until the death of Blondet, the latter continually performed acts of acknowledgment toward said minors as his natural children and treated them as such, privately and publicly, with words, gestures and acts; supporting them, feeding them, taking them out, being kind to them and taking care of them. We have no doubt that José H. Blondet is the father of the minors José Angel and Nitza Enid Peña and that said minors uninterruptedly enjoyed the condition as of natural children.".

■ We have carefully examined the transcript of the evidence and we consider that plaintiffs' evidence which deserved full credit to the trial court is sufficient to sustain the judgment. *Colón* v. *Heirs of A. J. Tristani*, 44 P.R.R. 163; *Bianchi* v. *Heirs of Bianchi, supra.* According to the same Rule 52(a), "Findings of fact based on oral testimony shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In our

---

[4] In the pertinent part, Rule 52(a) provides that "In all actions the court shall set forth the facts as found by it and state separately its conclusions of law thereon and direct the entry of the appropriate judgment . . ."

opinion it cannot be maintained that the findings of the court *a quo* are clearly erroneous. Therefore, this error was not committed. Nor was the last error assigned by appellants as to the payment of $300 for attorney's fees.

The judgment will be affirmed.

Mr. Justice Snyder did not participate in the decision of this case.